■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OMAR PICKENS, Appellant. [874 NYS2d 570]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (J. Goldberg, J.), rendered November 17, 2006, convicting him of murder in the second degree and criminal possession of a weapon in the fourth degree, after a nonjury trial, and imposing sentence.

Ordered that the judgment is modified, on the facts, by reducing the defendant's conviction of murder in the second degree under the first count of the indictment to manslaughter in the first degree, and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for sentencing on the conviction of manslaughter in the first degree.

On November 12, 2004, the defendant went to visit his children at the apartment of their mother, Sparkle Griffith. At the time, Griffith's new boyfriend, Akinyele Gaskin, was present, and the defendant eventually began berating Griffith and insulting Gaskin. According to Griffith, the two men engaged in a fight, and Griffith took her young daughter to a neighbor's apartment. She returned immediately to her own apartment, found blood in the living room, went into the bedroom, and saw Gaskin standing with his back to the wall. The defendant was in front of him. Griffith could not remember what either man's hands were doing, but she saw blood and screamed. All three ran out of the apartment.

Griffith testified that she thought that Gaskin ran out of the apartment first, but that it could have been the defendant. According to Griffith, when the defendant exited the building he ran down the street, while Gaskin ran to a police van that was stopped on the street. The police exited the van to attend to Gaskin. Gaskin then fell to the ground and later died in the hospital. A forensic pathologist testified that Gaskin had four stab wounds to the body, two of which could have been fatal. Gaskin also had abrasions on his knuckles that were consistent with having punched someone.

The day after the incident, the defendant was arrested and gave two written statements and one videotaped statement to the police. The defendant admitted that he had been verbally abusive, but claimed that Gaskin had initiated the physical fight by punching him in the face. The defendant stated that after he fell to the ground, Gaskin beat him with his fists and "stomped" on him. The defendant, who used to live at the apartment, grabbed a "Thanksgiving knife" he previously had hidden under the couch and started to swing it wildly and hit

Gaskin with it. At first the sheath was on the knife, but at some point during their struggle it came off. The defendant believed he was acting in his own defense, and stated that once he saw blood he dropped the knife and ran out of the apartment. At the time of his arrest, the defendant had injuries that were consistent with having been hit and kicked on the head and fingers.

The defendant was charged with murder in the second degree and criminal possession of a weapon. During the nonjury trial, the Supreme Court agreed to consider charges on the lesser-included offenses of manslaughter in the first degree and manslaughter in the second degree. Following the trial, the defendant was convicted of murder in the second degree and criminal possession of a weapon in the fourth degree. The defendant appeals, and we modify.

Contrary to the defendant's contention, the evidence presented by the People disproved beyond a reasonable doubt his justification defense (*see* Penal Law § 35.15 [1]; *People v Craig*, 78 NY2d 616, 619 n 1 [1991]). Viewed in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), the evidence showed that the defendant did not fear for his life, that Gaskin was not using deadly physical force upon him, and that the defendant did not satisfy his duty to retreat (*see* Penal Law § 35.15 [2] [a]). Thus, the evidence was legally sufficient to disprove the defendant's claim that he was justified in using deadly physical force (*see People v Watts*, 57 NY2d 299, 301 [1982]; *People v Torres*, 252 AD2d 60, 65 [1999]; *People v Brown*, 187 AD2d 312, 313 [1992]). The defendant's further contention that the evidence was legally insufficient to establish his intent to kill Gaskin is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Hawkins*, 11 NY3d 484 [2008]; *People v Hernandez*, 55 AD3d 849 [2008]). In any event, when viewed in the light most favorable to the People (*see People v Contes*, 60 NY2d at 621), Griffith's testimony and the evidence of the stab wounds established a valid line of reasoning and permissible inferences which could lead a rational person to the conclusion that the defendant intended to kill Gaskin (*see* Penal Law § 125.25 [1]; *People v Williams*, 84 NY2d 925, 926 [1994]). Accordingly, the evidence was legally sufficient to support the conviction of murder in the second degree (*see People v Brown*, 46 AD3d 949, 951 [2007]; *People v Price*, 35 AD3d 1230, 1231-1232 [2006]; *People v Flowers*, 289 AD2d 504 [2001]).

The defendant also argues that the verdict was against the weight of the evidence. It is well settled that "[e]ven if all the elements and necessary findings are supported by some credible evidence, the [appellate] court must examine the evidence fur-

ther. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *People v Romero*, 7 NY3d 633, 643 [2006]). Upon our independent review pursuant to CPL 470.15 (5), we are satisfied that the defendant's conviction of murder in the second degree was against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

The evidence, properly weighed, does not prove beyond a reasonable doubt that the defendant intended to kill, rather than seriously injure, Gaskin (*compare* Penal Law § 125.25 [1] with Penal Law § 125.20 [1]). The trial court rejected the People's assertion that the defendant had brought the knife to Griffith's apartment and had gone there intending to kill Gaskin. Although the forensic evidence showed that Gaskin sustained deep stab wounds, and Griffith testified that at one point the defendant was between Gaskin and her bedroom door, this evidence supports a finding that the wounds were inflicted in the midst of a struggle, and not as part of a calculated effort to kill Gaskin. Indeed, the forensic expert testified that the placement of an incised wound on Gaskin's arm might be consistent with the defendant having indiscriminately swung the knife back and forth with the sheath on, and the sheath having fallen off. Moreover, there is evidence that the defendant, who sustained his own injuries during the fight, left the apartment first, with Gaskin chasing after him. This evidence is inconsistent with a finding that, at the moment the defendant decided to withdraw from the fight, it was his intent to cause Gaskin's death.

Nonetheless, the evidence demonstrates beyond a reasonable doubt that the defendant, who introduced the knife into what had been a fist fight, intended to seriously injure Gaskin (*cf.* Penal Law § 125.20 [1]). Accordingly, we modify the judgment by reducing the conviction from murder in the second degree to manslaughter in the first degree (*see* CPL 470.15 [5]), a lesser-included offense that was submitted to the trial court for consideration. We remit the matter to the Supreme Court, Kings County, for sentencing on that conviction (*see* CPL 470.20 [4]).

We agree with the defendant that the trial court erred in allowing the People to introduce a witness whose sole effect and purpose was to impeach the credibility of the People's main witness, who had not affirmatively damaged the People's case (*see People v Reed*, 40 NY2d 204, 207 [1976]; *People v Fitzpatrick*, 40

NY2d 44, 49-51 [1976]; *People v Freeman*, 9 NY2d 600, 603-604 [1961]; *People v De Martini*, 213 NY 203, 214-216 [1914]; *cf.* CPL 60.35 [1]). However, the evidence of the defendant's guilt of the lesser-included offense of manslaughter in the first degree was overwhelming, and there is no significant probability that the outcome with respect to that offense would have been different in the absence of the error (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]). Therefore, in light of our determination modifying the conviction by reducing it to one for manslaughter in the first degree, the error in admitting the challenged evidence was harmless.

The defendant's contention that the grand jury proceedings were defective because the Assistant District Attorney did not instruct the grand jury on the justification defense is without merit. "[T]he People maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused" (*People v Mitchell*, 82 NY2d 509, 515 [1993], citing *People v Lancaster*, 69 NY2d 20, 25-26 [1986], *cert denied* 480 US 922 [1987]; *see People v Colucci*, 32 AD3d 1044, 1045 [2006]; *People v Edwards*, 32 AD3d 281, 282 [2006]; *People v Ramjit*, 203 AD2d 488, 489 [1994]). No evidence before the grand jury supported a justification defense, and, accordingly, no such charge was warranted (*see People v Mitchell*, 82 NY2d at 514).

The defendant was not denied the effective assistance of counsel (*see People v Henry*, 95 NY2d 563, 565 [2000]; *People v Baldi*, 54 NY2d 137, 147 [1981]).

The defendant's remaining contention, that his waiver of a jury trial was not knowing or voluntary, is unpreserved for appellate review and, in any event, is without merit. Spolzino, J.P., Covello, Balkin and Belen, JJ., concur.