# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1051**

**KA 12-02392**

PRESENT: SCUDDER, P.J., SMITH, FAHEY, SCONIERS, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    OPINION AND ORDER

TODD R. HEATLEY, DEFENDANT-APPELLANT.

---

THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR RESPONDENT.

--------------------------------------------------------------------------------

Appeal from a judgment of the Erie County Court (Sheila A. DiTullio, J.), rendered November 9, 2010. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is modified as a matter of discretion in the interest of justice and on the law by reducing the conviction of murder in the second degree (Penal Law § 125.25 [1]) to manslaughter in the first degree (§ 125.20 [1]) and vacating the sentence and the matter is remitted to Erie County Court for sentencing on the conviction of manslaughter in the first degree.

Opinion by SCUDDER, P.J.: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]) in connection with the stabbing death of the victim. It is undisputed that the altercation between defendant and the victim occurred outside the two-family residence where they each had attended separate parties and, although several other guests also were outside, there were no witnesses to the altercation.

I

Contrary to defendant's contention, County Court's determination that a prosecution witness was not an agent of the government when he spoke to defendant is supported by the record (*see People v Young*, 100 AD3d 1427, 1427-1428, *lv denied* 20 NY3d 1105).

Defendant failed to preserve for our review his contention that a prosecutor who participated with him in a demonstration of the altercation during cross-examination thereby provided unsworn testimony (*see* CPL 470.05 [2]; *see generally People v Hawkins*, 11 NY3d 484, 491-493). In any event, we note that the record establishes that

defendant portrayed the victim during the demonstration and directed the actions of the prosecutor, who portrayed defendant (*cf. People v Williams*, 90 AD2d 193, 196).  We conclude that, "[u]nder the circumstances, . . . no undue prejudice resulted" (*People v Barnes*, 80 NY2d 867, 868; *see People v Jones*, 70 AD3d 1253, 1255; *cf. Williams*, 90 AD2d at 196).  We further conclude that defendant's contention that he was denied effective assistance of counsel based upon the failure of defense counsel to object to the demonstration is without merit inasmuch as defendant failed " 'to demonstrate the absence of strategic or other legitimate explanations' for defense counsel's allegedly deficient conduct" (*People v Atkins*, 107 AD3d 1465, 1465, *lv denied* 21 NY3d 1040).

Defendant failed to object to the court's charge to the jury on the justification defense and thus failed to preserve for our review his contention that the court improperly lowered the People's burden of proof to disprove the defense (*see People v Johnson*, 103 AD3d 1226, 1226, *lv denied* 21 NY3d 944).  In any event, we conclude that the court's charge properly informed the jury that, if it determined that defendant was justified in using deadly force against the victim, it must acquit him of all counts (*see generally id.*).  We therefore also reject defendant's contention that the failure of defense counsel to object to the charge deprived him of effective assistance of counsel (*see id.*).

II

We reject defendant's contention that the verdict is against the weight of the evidence with respect to the justification defense. Defendant testified that the victim was holding defendant's neck under the victim's arm while he punched defendant and that defendant felt dizzy and was afraid that he would pass out and then "be demolished." Defendant testified that he therefore removed two "throwing" knives from a sheath on his belt and stabbed the victim in an effort to have the victim release him.  The People established, however, that the victim was five inches shorter and only slightly heavier than defendant and that he was not armed.  Thus, we conclude that, although a different verdict would not have been unreasonable, when viewing the elements of the justification defense as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349; *People v Bleakley*, 69 NY2d 490, 495), the jury did not fail to give the evidence the weight it should be accorded (*see People v Massey*, 61 AD3d 1433, 1433, *lv denied* 13 NY3d 746; *see also People v Heary*, 104 AD3d 1208, 1209, *lv denied* 21 NY3d 943, *reconsideration denied* 21 NY3d 1016).

III

Defendant further contends that the verdict is against the weight of the evidence because the People did not prove beyond a reasonable doubt that he had the requisite intent to kill the victim.  We note that defendant does not separately contend that the evidence is legally insufficient to support the conviction (*cf. People v Rice*, 105 AD3d 1443, 1443-1444; *People v Stephenson*, 104 AD3d 1277, 1278, *lv denied* 21 NY3d 1020; *People v Stepney*, 93 AD3d 1297, 1298, *lv denied*

19 NY3d 968).  In any event, defendant failed to renew his motion to dismiss at the close of proof and thus failed to preserve for our review a contention that the evidence is legally insufficient to support the conviction (*see People v Hines*, 97 NY2d 56, 61, *rearg denied* 97 NY2d 678).  Nevertheless, it is now well established that, "in conducting its weight of the evidence review, a court must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt" (*Danielson*, 9 NY3d at 349).  Upon our review of the elements of the crime of murder in the second degree, we conclude that, viewing the facts in the light most favorable to the People, "a jury could [not] logically conclude that the People sustained [their] burden of proof" with respect to the element of intent to kill (*id.*).

It is undisputed that defendant stabbed the victim eight times with two "throwing" knives and then left the scene and discarded the knives, which were later recovered by the police.  The knives were described by a police witness as having two- to three-inch blades, only the tips of which were sharp.  Prosecution witnesses testified that the victim was angry and aggressive because he was asked to leave the party and that defendant, and others, attempted to diffuse the situation developing between the victim and his friend, and the host of the party.  The People's evidence included photographs of defendant that depict extensive bruising on his back and side.  The testimony of the Medical Examiner and photographs taken during the autopsy of the victim establish that the victim sustained five stab wounds to the front of the body:  three wounds were located in the area of the victim's left underarm, one wound was located in the area of the victim's right underarm, and another wound was located to the left of the midline of the victim's chest.  There also were three wounds located on the back of the victim's body:  one wound was located in the upper back above the left arm, another wound was located in the upper midline area of the back, and the third wound was located in the lower right area of the back.  Each lung had a single laceration.  The Medical Examiner explained that the lacerations to the lungs had the potential to be life-threatening in the event that fluid entered the lungs, became infected, and resulted in a systemic infection.  Only one of the eight wounds, however, was immediately life-threatening.  The fatal wound occurred when defendant stabbed the victim in the midline area of the chest, penetrating the right ventricle of the heart.  The Medical Examiner also testified that the victim's left arm was raised when he was stabbed, that there were no defensive wounds with the exception of a 1½-inch cut to the victim's right forearm, and that the short blade of the knife was able to penetrate the heart because the position of the victim's body caused the heart to be compressed closer to the skin.

Although defendant contends that the verdict is against the weight of the evidence with respect to the element of intent, he does not make an actual weight of the evidence argument, i.e., that the overall weight of the evidence, the conflicting testimony, and the inferences that may be drawn therefrom render the verdict against the weight of the evidence (*see generally Danielson*, 9 NY3d at 348; *People*

*v Romero*, 7 NY3d 633, 643-644; *Bleakley*, 69 NY2d at 495).  Indeed, the facts themselves are essentially undisputed; the testimony of the People's witnesses and the physical evidence is consistent with defendant's testimony that he stabbed the victim in an effort to have the victim release him during an altercation that the victim initiated.  Instead, defendant contends that the verdict is against the weight of the evidence because the credible testimony of the People's witnesses does not "prove the elements of the crime beyond a reasonable doubt" (*Danielson*, 9 NY3d at 349).

We agree with defendant that, despite the number of injuries the victim sustained, including a single fatal stab wound, the credible evidence is not sufficient to prove beyond a reasonable doubt that he intended to kill the victim.  Upon our review of the credible evidence presented by the People (*see id.*), we conclude that the evidence is not sufficient to prove the element of intent to kill because the physical evidence, particularly the location of the stab wounds, supports the conclusion that defendant, during an altercation that the victim initiated, stabbed the victim in an effort to have the victim release him and not with an intent to kill him.  Had defendant expressly contended that the evidence is legally insufficient to support the conviction, we would conclude that there is no "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial . . . and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*Bleakley*, 69 NY2d at 495; *see Danielson*, 9 NY3d at 349).

IV

For the reasons that follow, we decline to dismiss the indictment pursuant to CPL 470.20 (5) on the ground that the verdict is against the weight of the evidence.  Instead, we conclude that the conviction should be reduced pursuant to CPL 470.15 (2) (a) to the lesser included offense of manslaughter in the first degree (Penal Law § 125.20 [1]), and the matter should be remitted to County Court for sentencing on the lesser included offense pursuant to CPL 470.20 (4).

CPL 470.20 (5) provides that the determination by an intermediate appellate court that a verdict is against the weight of the evidence requires dismissal of the indictment.  We respectfully disagree with our concurring colleague and our colleagues at the Second Department that CPL 470.15 (5) provides the authority to reduce a conviction to a lesser included offense upon a determination that the verdict is against the weight of the evidence (*see e.g. People v Santiago*, 97 AD3d 704, 706-707, *lv granted* 20 NY3d 935; *People v Haney*, 85 AD3d 816, 818-819, *lv denied* 17 NY3d 859).  Rather, we agree with our dissenting colleague that CPL 470.15 (5) permits the judgment of a multi-count indictment to be modified in the event that the evidence with respect to one or more of those counts is against the weight of the evidence by dismissing the count or counts.  In our view, the power to reduce a conviction to a lesser included offense is limited to cases in which it is determined that the evidence "is not legally sufficient to establish the defendant's guilt of an offense of which

he [or she] was convicted but is legally sufficient to establish his [or her] guilt of a lesser included offense" (CPL 470.15 [2] [a]).

We recognize, as our concurring colleague explains, that the legislature changed the remedy for reversal of a judgment on a weight of the evidence review from granting a new trial to dismissing the indictment (*see* L 1970, ch 996, § 470.20 [5]), thereby removing the distinction between a *reversal* on the ground of legal insufficiency and weight of the evidence review. We nevertheless disagree with our concurring colleague that the legislative action provided authority to *modify* a judgment by reducing a conviction to a lesser included offense if the weight of the evidence supported a lesser included offense, but not the offense of which defendant was convicted. The legislature explicitly provided the alternative remedy of reducing a conviction to a lesser included offense if the evidence was *legally insufficient* to support the conviction but was legally sufficient to support the conviction of a lesser included offense (*see* CPL 470.15 [2] [a]); however, the statute is silent with respect to that remedy if the verdict is against the weight of the evidence (*see id.*). In our view, if the legislature had intended to provide the same relief to modify a judgment in the event that the weight of the evidence failed to support the conviction but supported a lesser included offense, it would have done so.

We respectfully disagree with our concurring colleague that *People v Cahill* (2 NY3d 14) supports the conclusion that a judgment may be modified by reducing a conviction to a lesser included offense if the verdict is against the weight of the evidence. Instead, we agree with our dissenting colleague that the unique circumstances involved in *Cahill* do not apply here. In *Cahill*, defendant was convicted of two counts of murder in the first degree (Penal Law § 125.27 [1] [a] [v], [vii]), in connection with the murder of his wife, based upon two aggravating factors: witness elimination murder and intentional murder in the course of and in furtherance of a burglary (*Cahill*, 2 NY3d at 35). The Court of Appeals explained that the aggravating factors were established by the legislature "to create a subclass of defendants who, in contrast to others who commit intentional murder, it thought deserving of the death penalty. By this device, the lawmakers saw to it that the death penalty could not fall randomly on all murder defendants" (*id.* at 62). The Court further explained that the aggravating factor "elevates intentional murder to capital-eligible murder" (*id.*). In other words, the offense is intentional murder, but the aggravating factor must be proved in addition to the intentional murder in order to impose the death penalty on a particular defendant (*see id.* at 63). In *Cahill*, the Court of Appeals "vacated" the conviction of witness elimination murder because the proof at trial led the Court to conclude that defendant's motive to kill his wife was not related to eliminating her as a witness in a Family Court matter (*id.* at 62). The Court also concluded that the *additional and independent crime* of burglary was not proved but, rather, that the People improperly used the same mens rea, i.e., defendant's intent to kill, for both the murder and the burglary requirements of the offense of murder in the first degree (*id.* at 64).

Indeed, the Court described Penal Law § 125.27 (a) (1) as requiring a "double crime—murder 'plus' " (*id.* at 64). The Court determined that one of the two "crimes," i.e., the "plus crime," in each count of murder in the first degree was not proved and therefore modified the judgment accordingly (*id.* at 72). In our view, the resolution of *Cahill* was not a reduction to a lesser included offense because the verdict was against the weight of the evidence; instead, the resolution was a determination that the capital penalty was not available because only the discrete intentional murder, and not the discrete "plus crime," was proved. In our view, therefore, *Cahill* does not support the conclusion that here, the conviction of murder in the second degree may be reduced to a lesser included offense if the weight of the evidence supports a lesser included offense.

V

We conclude, as does our dissenting colleague, that CPL 470.20 (5) requires dismissal of the indictment if it is determined that the verdict is against the weight of the evidence. Where as here, however, there is no separate contention that the conviction is not supported by legally sufficient evidence, but instead the analysis of the legal sufficiency of the evidence is conducted solely in the context of a contention that the verdict is against the weight of the evidence (*see Danielson*, 9 NY3d at 349), we conclude that dismissal of the indictment is not the appropriate remedy. We note that, in *Danielson*, the Court of Appeals stated that it was called upon "to determine the scope of weight of the evidence review when a defendant has failed to preserve a challenge to the legal sufficiency of his conviction. In particular, we are asked whether weight of the evidence review requires assessment of the elements of the crime for which defendant was convicted, or whether such review would simply be tantamount to back-door sufficiency review" (*id.* at 346). Indeed, the Court concluded that "the Appellate Division incorrectly concluded that it was unnecessary to conduct an element-based review" (*id.* at 349). We interpret that language to require us to determine, in the first instance, whether the evidence was legally sufficient to support the conviction. We therefore conclude that, despite the fact that our review is in the context of a contention that the verdict is against the weight of the evidence, our assessment of the elements of the crime of murder in the second degree under these circumstances is not a determination on the facts (*see* CPL 470.15 [5]), i.e., a consideration of the "credible evidence, conflicting testimony and inferences that could be drawn from the evidence" (*Danielson*, 9 NY3d at 349). Instead, our assessment is a determination on the law that the evidence is legally insufficient with respect to the element of intent (*see* CPL 470.15 [4] [b]).

We respectfully disagree with our dissenting colleague's conclusion that our review is limited by defendant's "request for only a weight-based review" and that, based on that request, we must reverse the judgment as against the weight of the evidence and dismiss the indictment. Our conclusion that the judgment should be modified by reducing the conviction to a lesser included offense is supported by our reasoning that a defendant may not usurp our authority to

determine the appropriate statutory remedy as set forth in CPL 470.20 by the manner in which he or she challenges the legal sufficiency of the evidence, i.e., within the context of a weight of the evidence contention rather than by an express contention that the conviction is not supported by legally sufficient evidence (*see generally Bleakley*, 69 NY2d at 495).  In other words, we conclude that we are not required to afford the remedy of dismissal of the indictment pursuant to CPL 470.20 (5) merely because defendant's contention that the evidence of the intent to kill was not proved beyond a reasonable doubt is made in the context of a request for a weight of the evidence review, rather than in the context of a contention that the conviction is not supported by legally sufficient evidence, even if that contention is not preserved for our review.

V

Thus, based upon our determination that the evidence is not sufficient to establish beyond a reasonable doubt that defendant intended to kill the victim, but it is sufficient to establish beyond a reasonable doubt that he intended to cause serious physical injury to the victim, which resulted in the victim's death (*see* Penal Law § 125.20 [1]), we conclude that the conviction of murder in the second degree should be reduced to manslaughter in the first degree pursuant to CPL 470.15 (2) (a).  Accordingly, we conclude that the judgment should be so modified, and the matter should be remitted to County Court for sentencing on the manslaughter conviction (*see* CPL 470.20 [4]).

We have reviewed defendant's remaining contentions and conclude that none requires reversal or further modification of the judgment.

SCONIERS and VALENTINO, JJ., concur; SMITH, J., concurs in the following Opinion:  I respectfully disagree with the majority's conclusions "that CPL 470.20 (5) requires dismissal of the indictment if it is determined that the verdict is against the weight of the evidence," and that we should review the legal sufficiency of the evidence in this case.  To the contrary, I conclude that defendant does not seek review of the legal sufficiency of the evidence on appeal and, as noted by the majority, did not in any event preserve a legal sufficiency challenge for our review.  In my view, we must, pursuant to defendant's request, review the weight of the evidence with respect to whether the People proved beyond a reasonable doubt that he had the requisite intent to kill the victim.  I further conclude that the verdict convicting defendant of murder in the second degree (Penal Law § 125.25 [1] [intentional murder]) is against the weight of the evidence and that the conviction therefore should be reduced to manslaughter in the first degree (§ 125.20 [1]).  Because this will yield the same result as that reached by the majority, I thus concur in the result.  Furthermore, I agree with the majority's resolution of the remaining issues raised by defendant on appeal, and join in its determination to reject the remainder of defendant's contentions.

Turning to the issues upon which we disagree, I note that the majority concludes that we must review the legal sufficiency of the evidence as part of our weight of the evidence review.  The majority further concludes that the evidence in this case is legally insufficient to establish that defendant acted with the requisite intent to cause the death of the victim despite, as noted, defendant's failure to preserve the issue for our review and the absence of a request by defendant on appeal for a sufficiency review.

Most importantly, although I agree with the majority that, in reviewing the weight of the evidence, we "must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349), I conclude that the evidence in this case is legally sufficient to support the conviction with respect to defendant's intent to cause the death of the victim.  "The standard for reviewing the legal sufficiency of evidence in a criminal case is whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' " (*People v Contes*, 60 NY2d 620, 621, quoting *Jackson v Virginia*, 443 US 307, 319, *reh denied* 444 US 890), which, in turn, requires that we "determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495).

After conducting such a review, I respectfully disagree with the majority's conclusion that no rational jury could reach the conclusion that defendant intended to kill the victim.  There was evidence establishing that defendant stabbed the victim in the chest and back, causing a total of eight wounds, including the fatal wound that penetrated the victim's chest cavity and pierced his heart.  It is well settled that, when reviewing the legal sufficiency of the evidence in a criminal case, we must view the evidence in the light most favorable to the People (*see Contes*, 60 NY2d at 621), and "indulg[e] in all reasonable inferences in the People's favor" (*People v Ford*, 66 NY2d 428, 437; *see People v Delamota*, 18 NY3d 107, 113).  Viewed in that light, I agree with the People that a rational jury could have concluded that defendant intended to kill the victim, based on the number of stab wounds and the fact that the fatal wound left a four-inch long track in the victim's chest and pierced his right ventricle (*see People v Massey*, 61 AD3d 1433, 1433-1434, *lv denied* 13 NY3d 746; *People v Gardella*, 5 AD3d 695, 695-696, *lv denied* 2 NY3d 799; *see also People v Johnson*, 20 AD3d 808, 811-812, *lv denied* 5 NY3d 853; *People v Self*, 239 AD2d 943, 943, *lv denied* 90 NY2d 910).

Notwithstanding the legal sufficiency of the evidence with respect to defendant's intent to cause the victim's death, however, I further conclude that the verdict is contrary to the weight of the evidence on that issue.  All of the evidence indicates that defendant stabbed the victim with two knives, both of which had blades that were two to three inches long.  The Medical Examiner who performed the autopsy testified that the fatal wound could have been caused by such

a knife if the victim's chest was compressed at the time that the wound was inflicted, which could result in a wound that is longer than the weapon that caused it. In his testimony concerning the stabbing, defendant described a fight in which the victim was holding defendant and striking him, and the wounds are consistent with defendant's testimony that he kept stabbing the victim until the victim released his grip on defendant. The expert medical testimony also established that the victim had only one wound that could be described as a defensive wound, and more such wounds would be expected if defendant were not truthfully describing the incident. In addition, the victim had stab wounds under his arm that were consistent with his being stabbed while that arm was raised or held away from his body, which comports with defendant's version of the events. Although defendant concedes that the victim was unarmed and thus defendant's acts were not justified, his description of the event is consistent with an intent to injure and inconsistent with an intent to kill.

In addition, the record contains evidence establishing that the victim was the aggressor, and there was evidence that defendant exhibited bruising that could have been caused by the victim holding and punching defendant, consistent with defendant's version of the events. The evidence introduced by the People also established that the victim had consumed the drug ecstasy and a significant amount of alcohol during the party that preceded this incident. The evidence further establishes that the incident began when the host of the party told the victim and his friends to leave, but they became belligerent and refused. The People introduced evidence that defendant had the knives at the party prior to the fight in which the victim was killed, but there is no evidence that defendant attempted to use them before he became involved in the fight with the victim. Finally, I agree with the majority and the dissent that the location of the victim's wounds are more consistent with defendant's version of the events and with an intent to injure the victim than with the intent to kill the victim. Therefore, I agree with the dissent that the verdict is against the weight of the evidence.

The majority and the dissent conclude that, if we determine that the conviction of murder in the second degree is contrary to the weight of the evidence, our only possible remedial action is to dismiss that count of the indictment. I disagree. It is true that the Criminal Procedure Law states that, "[u]pon a reversal or modification of a judgment after trial upon the ground that the verdict . . . with respect to a particular count . . . is against the weight of the trial evidence, the court must dismiss the . . . reversed count" (CPL 470.20 [5]). The majority and the dissent read the use of the word "must" in the statute to create a different rule for review of the weight of the evidence than exists for review of the legal sufficiency of the evidence. CPL 470.20 provides in the preamble, however, that, "[u]pon reversing or modifying a judgment . . . . , an intermediate appellate court must take or direct such corrective action as is necessary and appropriate both to rectify any injustice to the appellant resulting from the error or defect which is the subject of the reversal or modification and to protect the rights of the respondent. The particular corrective action to be taken or

directed is governed *in part* by," e.g., CPL 470.20 (5) (emphasis added).  Thus, although CPL 470.20 (5) uses the word "must," that subdivision must be read together with the preamble, and thus it in fact is only one of the possible corrective actions available to this Court.  We may take other corrective action as "appropriate . . . to rectify [the] injustice to the appellant resulting from" the improper weighing of the evidence by the jury (CPL 470.20).

Furthermore, it is clear that the revision of the statute that occurred in 1971, when the Criminal Procedure Law became effective, was intended to create equality between appellate review of the weight of the evidence and of the legal sufficiency of the evidence.  Prior to that date, there were cases decided pursuant to the former Criminal Code indicating that a new trial was required if a judgment was reversed on appeal because the verdict was against the weight of the evidence (*see e.g. People v Slaughter*, 34 AD2d 50, 52; *People v Stein*, 15 AD2d 961), but dismissal of the indictment was the remedy if the evidence was legally insufficient (*see e.g. People v Rice*, 35 AD2d 590, *affd* 28 NY2d 1, *cert denied sub nom. Colon v New York*, 402 US 905).  In order to remove that distinction, the Temporary Commission on Revision of the Penal Law and the Criminal Code recommended a change in this law, as part of the enactment of the Criminal Procedure Law.  Thus, it is long settled that subdivisions (2) and (5) of CPL 470.20 "definitely work[] a change [in the existing state of the law] by requiring a *dismissal* of the indictment or information upon any reversal for either legal insufficiency or lack of weight of trial evidence" (Richard G. Denzer, former Practice Commentaries to McKinney's Cons Laws of NY, Book 11A, CPL 470.20; *see* Temporary Commn on Revision of the Penal Law and the Criminal Code, 1967 Staff Comment to proposed CPL 240.40 [subsequently renumbered CPL 470.20]).  Consequently, in an early case interpreting the statute, the Court of Appeals indicated that "the Legislature . . . in enacting the Criminal Procedure Law introduced the present requirement for dismissal of an accusatory instrument where a reversal is stated to be predicated on factual considerations (CPL 470.20 [(2) - (5)])" (*People v Mackell*, 40 NY2d 59, 63).  As Professor Preiser noted, "[i]n the case of weight of the evidence, dismissal was chosen for the CPL rule on the theory that *as a matter of fairness no distinction should be made between the two grounds for reversal* (see original practice commentaries by Judge Denzer, the revision commission's director)" (Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.20 at 248-249 [emphasis added]).  Inasmuch as the statute was designed to equalize the results of both types of review, that same statute should not be read to require different treatment based on the type of review employed by the intermediate appellate court.

Moreover, in addition to requiring that the indictment or the relevant count thereof be dismissed when an appellate court determines that the verdict is against the weight of the evidence with respect to that charge, other subdivisions of CPL 470.20 state that, "[u]pon a reversal of a judgment after trial for legal insufficiency of trial evidence, the court must dismiss the accusatory instrument . . . [and u]pon a modification of a judgment after trial for legal insufficiency of trial evidence with respect to one or more but not all of the

offenses of which the defendant was convicted, the court must dismiss the count or counts of the accusatory instrument determined to be legally unsupported and must otherwise affirm the judgment" (CPL 470.20 [2], [3]).  Thus, the express language of CPL 470.20 (2) through (5), read literally and without reference to other statutory sections, requires dismissal of the indictment when this Court concludes that a conviction is not supported by legally sufficient evidence or that the verdict is against the weight of the evidence. It is beyond question, however, that we may reduce a conviction to a lesser included charge if we find that the evidence is not legally sufficient to support it, and indeed the majority recommends that we do so in this case.

This Court's power to reduce a charge derives from CPL 470.15, which states in CPL 470.15 (2) (a) that, "[u]pon a determination that the trial evidence adduced in support of a verdict is not legally sufficient to establish the defendant's guilt of an offense of which he was convicted but is legally sufficient to establish his guilt of a lesser included offense, the court may modify the judgment by changing it to one of conviction for the lesser offense."  That section also states, however, that an "intermediate appellate court must either affirm or reverse or modify the criminal court judgment, sentence or order.  The ways in which it may modify a judgment include, but are not limited to," reduction of the crime to a lesser included offense as set forth above (CPL 470.15 [2]).  Here, I conclude that, although the evidence is legally sufficient to support the conviction, the verdict is contrary to the weight of the evidence.  Given the statutory language affording us the power to take the action that will "rectify [the] injustice to the appellant resulting from" the improper weighing of the evidence by the jury (CPL 470.20), and the additional language indicating that we "are not limited to" the corrective actions listed in the statute (CPL 470.15 [2]), in my view we should modify the judgment by reducing the charge, as indicated herein.

It has long been the rule in New York that a weight of the evidence analysis in a homicide involves review of "the question as to the defendant's guilt, *as to the grade of his offense if he was guilty*, as to his claim that he acted in self-defense or that the homicide was the result of accident" (*People v Gaimari*, 176 NY 84, 94 [emphasis added]; *see People v Romero*, 7 NY3d 633, 640).  This rule is clearly contrary to the majority's position that we may not reduce a crime to a lesser included offense, i.e., to a different grade of offense, upon our review of the weight of the evidence.  Thus, I disagree with the majority's and dissent's interpretation of the statutory scheme.

Most importantly, there are numerous cases in which the appellate courts of New York have reduced convictions to lesser included offenses upon finding that all or part of a verdict is against the weight of the evidence (*see e.g. People v Freeman*, 98 AD3d 682, 683-684; *People v Grice*, 84 AD3d 1419, 1420, *lv denied* 17 NY3d 806; *People v Harvin*, 75 AD3d 559, 560-561; *People v Alvarez*, 38 AD3d 930, 934-935, *lv denied* 8 NY3d 981; *People v Molina*, 8 AD2d 930, 931), including reducing second-degree murder convictions to lesser included

offenses (*see e.g. People v Santiago*, 97 AD3d 704, 706-707, *lv granted* 20 NY3d 935; *People v Pickens*, 60 AD3d 699, 701-702, *lv denied* 12 NY3d 928; *see also People v Dudley*, 31 AD3d 264, 264-265, *lv denied* 7 NY3d 866).  Moreover, in *People v Cahill* (2 NY3d 14, 57), the Court of Appeals reviewed the weight of the evidence in a case involving a first-degree murder conviction pursuant to CPL 470.30 (1), and concluded that "the evidence adduced on [the first-degree intentional murder] count is legally sufficient, but that the verdict is against the weight of the evidence."  Based on that conclusion, the Court of Appeals reduced the conviction to second-degree murder (*id*. at 35).  This unequivocally countenances the reduction of a charge upon a finding that the verdict with respect to it is contrary to the weight of the evidence.

Accordingly, based upon the broad wording of the statute, the legislative history, and the numerous cases in which the other New York State appellate courts have done so, I disagree with the majority and the dissent and instead conclude that we may reduce the conviction to manslaughter in the first degree based upon the conclusion that the conviction of murder in the second degree is not supported by the weight of the evidence.  I further conclude that we should do so here.  Inasmuch as the majority concludes that we should reach the same result, I concur in the result.

FAHEY, J., dissents and votes to reverse in accordance with the following Opinion:  I respectfully dissent.  The majority and my concurring colleague would effectively eliminate the distinction between legal sufficiency and weight on intermediate appellate review.  The practical effect of the majority's position is that there would no longer be any reason to preserve the issue of legal sufficiency for at least intermediate appellate review because that issue could be raised in the context of a review based on weight of the evidence.  Effectively, this means that the possible benefit of a legal sufficiency review, i.e., conviction of a reduced charge and possibly a reduced sentence, could be obtained without establishing any basis for such an action.

I

The framework for this discussion is set out in CPL 470.15 (scope of review) and 470.20 (corrective action).  Legal sufficiency means that, when viewed in the light most favorable to the People, the facts support the charge as a matter of law.  By contrast, review based on the weight of the evidence means that, in viewing and comparing all the facts when sitting as the thirteenth juror, a conclusion may be reached beyond a reasonable doubt.  The statutory framework provides for different corrective actions for each basis of review.  The issue of legal sufficiency must be preserved (*see* CPL 470.05 [2]), and corrective action ranges from reversal and dismissal to a modification to a lesser included offense (*see* CPL 470.15 [2] [a]).  Although weight review requires no preservation (*cf*. CPL 470.05 [2]), the court is limited to reversal and dismissal as its only remedy (*see* CPL 470.20 [5]).

Recently, the Court of Appeals clearly set out the difference between these two forms of review in *People v Danielson* (9 NY3d 342, 348-349 [Kaye, Ch. J.]):

> "As we recently made clear in [*People v Romero*, 7 NY3d 633, 636], weight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable.  If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions.  Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt (*People v Crum*, 272 NY 348 [1936]).

> "Essentially, the court sits as a thirteenth juror and decides which facts were proven at trial (*see Tibbs v Florida*, 457 US 31, 42 [1982]).  Necessarily, in conducting its weight of the evidence review, a court must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt.  Sitting as the thirteenth juror, moreover, the reviewing court must weigh the evidence in light of the elements of the crime as charged to the other jurors, even when the law has changed between the time of trial and the time of appeal (*People v Noble*, 86 NY2d 814, 815 [1995]).

> "A verdict is legally sufficient when, viewing the facts in [the] light most favorable to the People, 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt' (*People v Acosta*, 80 NY2d 665, 672 [1993], quoting *People v Steinberg*, 79 NY2d 673, 681-682 [1992]).  A sufficiency inquiry requires a court to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained [their] burden of proof."

II

Here we are presented with a request for only a weight-based review.  Indeed, as the majority recognizes, defendant failed to preserve for our review any contention that the evidence is legally insufficient to support the conviction, and he does not separately contend on appeal that the evidence is legally insufficient to support

the conviction.  As a result, we are clearly limited to the framework set out for weight-based review.  We are not determining whether or not the facts, when viewed in the light most favorable to the People, are legally sufficient to support the conviction.  Instead, we are sitting as a thirteenth juror and weighing all of the credible evidence to decide whether the jury, in this instance, was justified in finding defendant guilty beyond a reasonable doubt.

I agree with the majority's recitation of the facts and analysis of the evidence in this case.  The People have not proved the charge of murder in the second degree beyond a reasonable doubt.  The evidence is particularly deficient on the element of intent.

III

In view of these independent tests and conceptual distinctions, I cannot conclude that a court, when asked to determine whether a verdict is justified on the *facts* (*see People v Bleakley*, 69 NY2d 490, 493; *see also* CPL 470.15 [5]), may, on the *law*, reduce a verdict it deems to be against the weight of the evidence to one convicting a defendant of a lesser included offense.  Weight of the evidence review is an all-or-nothing analysis of what the verdict was, not an analysis of what the verdict could have been.  Conversely, legal sufficiency requires an analysis of the adequacy of the proof, in establishing a prima facie case.

Our options are limited.  There is no basis upon which to create a new third option.

IV

This writing would be incomplete without a few additional points.

First, I join the majority in respectfully disagreeing with the Second Department's conclusion that CPL 470.15 (5) authorizes the reduction of a conviction to a lesser included offense upon a determination that the verdict is against the weight of the evidence. CPL 470.20 (5) specifically and plainly provides that, "[u]pon a reversal or a modification of a judgment after trial upon the ground that the verdict, either in its entirety or with respect to a particular count or counts, is against the weight of the trial evidence, the court *must dismiss* the accusatory instrument or any reversed count" (emphasis added).  CPL 470.15 (5), in turn, provides that "[t]he kinds of determinations of reversal or modification deemed to be on the facts include . . . a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."  Reading CPL 470.15 (5) in conjunction with the entirety of CPL article 470, including CPL 470.20 (5), leads me to conclude that the reference to modification in section 470.15 (5) involves circumstances in which an intermediate appellate court considers a *multi-count indictment* and determines that only one count, rather than the entirety of the indictment, must be dismissed.

Second, the decision of the Court of Appeals in *People v Cahill*

(2 NY3d 14) does not change my view of the relevant paradigm of CPL article 470.  In *Cahill*, the Court of Appeals, inter alia, reviewed two capital murder counts and concluded that the weight of the evidence did not support the aggravating or "plus" factors required to elevate murder in the second degree to murder in the first degree (*id.; compare* Penal Law § 125.25 [1] *with* § 125.27 [1]), and it thus reduced the conviction of two counts of capital murder to one count of murder in the second degree (*Cahill*, 2 NY3d at 72).  The circumstances of that case, however, were unusual inasmuch as there the Court, in relevant part, considered evidence relative to circumstances in which a "typical" intentional murder under Penal Law § 125.25 (1) punishable by a significant indeterminate sentence leaving open the possibility of parole (*see* § 70.00 [3] [a] [i]) may be elevated to an "atypical" intentional murder under section 125.27 (1) punishable by, inter alia, death or life imprisonment without parole (§ 60.06).  Indeed, in my view, *Cahill*'s result is borne of its peculiarity, and the Court's determination that the defendant there committed intentional murder but that the jury was not justified in concluding that he was eligible for the enhanced sentencing (*id.* at 37-38) does not lead me to believe that we may here reduce a conviction that is against the weight of the evidence to one of a lesser included offense.

V

Accordingly, for the reasons set forth above, I conclude that the judgment should be reversed, the indictment should be dismissed, and the matter should be remitted to County Court for further proceedings pursuant to CPL 470.45.

Entered:  February 14, 2014                          Frances E. Cafarell
                                                     Clerk of the Court