OPINION OF THE COURT
Smith, J.
The issue in this case is whether a prosecutor is required to present exculpatory statements of a defendant to the Grand Jury in addition to the inculpatory statements which were submitted. Because we hold that the prosecutor was not required to present such statements on the facts presented here, we affirm the order of the Appellate Division.
On November 13, 1990, shortly before 9:30 p.m., police emergency telephone number 911 received a call reporting a stabbing at a Manhattan apartment. Responding to the call, Police Officers Dauphnee and Krinke approached the door to the apartment, and Officer Dauphnee heard "yelling” from inside. When the officers knocked on the door, defendant, *511 Patsy Burgess Mitchell, who appeared to be intoxicated, opened it and allowed the officers, as well as emergency medical technicians, to enter. Once inside, Officer Dauphnee saw defendant’s husband, Sam Mitchell, lying on the floor with stab wounds to his chest. In response to Officer Dauphnee’s inquiry as to what happened, defendant stated, "[I] stabbed him because he was trying to beat on [me,] * * * he was cheating on [me] with a white woman[, and] he was a demon [and] a devil.” When asked where the knife was, defendant pointed to the kitchen table. Defendant was arrested and detained at her apartment for approximately 30 minutes while Officer Dauphnee waited for his supervisor.
Upon arrival at the police station, defendant was unruly, yelling repeatedly that she had stabbed and killed her husband and rendering futile attempts to read Miranda warnings to her. According to Detective Louis Torrellas, defendant was agitated, screamed that she stabbed and killed her husband, and stated, "Sam was no good, Sam had the devil.” She claimed that Sam treated her wrong and that he "fell on the knife.” Given defendant’s agitated state and the officers’ inability to administer Miranda warnings to her, the officers placed defendant in a holding cell until the following morning. Defendant’s husband died during the night.
The next morning, while being transported by Officer White from the holding cell to Central Booking, defendant was "boisterous,” stating that she had stabbed her husband, that she and her husband had gone to the Bronx to have a few drinks, that her husband waited until he got home to "start his s_,” that her husband was evil, and that she was trying to be peaceful. Defendant asked Officer White whether her husband would live. Officer White stated that he did not know. Defendant then stated that she did not stab her husband, that he fell on the knife, and that he did so to get back at her. Officer White asked her, "Why are you lying? You just spent the past couple of minutes telling me that you did stab him.” Defendant then stated, "Yeah, I stabbed that mother f_, he should have stayed with that b_ on 167th Street.”
At Central Booking, defendant was given her Miranda warnings and questioned about the incident. Defendant stated that during the course of a three-hour period, she and Sam walked, drank beer and wine and made various stops before reaching their apartment. At the apartment, they began *512 arguing and fighting when, during the struggle, she noticed a knife in Sam’s hand. A portion of defendant’s transcribed statement reads:
"Sam was holding the * * * knife in his left hand. I grabbed his hand, we were close to each other, and struggling. The knife was pointing toward his side. We both had our hands on the knife. Then I felt the knife go into him. At first he stood there, I yelled 'Sam,’ he didn’t say anything. I pulled the knife back, his hand still on the knife. Sam laid on the floor. I bent down to see if he was bleeding. When he was on the floor I noticed the blood. I ran and called 911. Then I wiped the blood off the knife and put the knife on the sink. Then the police came. I told them what happened, and they took me to the precinct.”
After defendant’s account of the incident was transcribed, it was read back to her, and signed by all the parties present. Defendant also gave a videotaped account of the incident.
At the Grand Jury proceeding, the prosecution did not present any of the arguably exculpatory statements made by defendant before Miranda warnings were given except for the statement of the defendant to the police at the scene that she had stabbed the deceased while he was trying to beat her. Specifically, when Officer Michael Dauphnee was asked whether he had a conversation with defendant when she opened the door, he responded:
"Upon entering the apartment, I observed a male black lying on the floor. And I asked Ms. Mitchell what happened. And she stated that she stabbed him because he was trying to beat on her. When I asked her where the knife was, she pointed out the knife on the kitchen table.”
The statements made by defendant after Miranda warnings were given were also not presented to the Grand Jury. The Grand Jury returned an indictment, charging defendant with manslaughter in the first degree.
Supreme Court dismissed the indictment because the prosecutor did not provide the Grand Jury with defendant’s written or videotaped exculpatory statements, or charge the Grand Jury on the defense of justification. That court granted the People leave to re-present their case to another Grand Jury. The Appellate Division reversed, on the law, reinstated the *513 indictment, and remanded the matter to Supreme Court for further proceedings (183 AD2d 503). Based on its interpretation of CPL 190.30 (1), that the statute would bar defendant’s exculpatory statements at trial as inadmissible hearsay and that the same prohibition should apply in the context of statements before the Grand Jury, the Appellate Division determined that Supreme Court erred in its conclusion that the People were required to present defendant’s exculpatory statements. Defendant appeals pursuant to leave granted by a Judge of this Court.
Defendant argues that the prosecutor failed to make a fair presentation of the available evidence to the Grand Jury and should have presented her exculpatory statements to the Grand Jury. The People assert that trial rules of evidence are applicable in a proceeding before a Grand Jury, and since a defendant’s out-of-court statements constitute hearsay, the People were not required to present them.
CPL 190.30 (1) states, "Except as otherwise provided in this section, the provisions of article sixty governing rules of evidence and related matters with respect to criminal proceedings in general, are, where appropriate, applicable to grand jury proceedings.” In addition to this provision, CPL 190.65 (1) requires "legally sufficient,” and "competent and admissible” evidence in Grand Jury proceedings (see also, CPL 70.10 [1]). Other than the specific exceptions to this general principle delineated by CPL 190.30 (2) through (7), deviation from this principle is limited. Thus, the general criminal trial court evidentiary rules normally apply to Grand Jury proceedings. These standards were met in the Grand Jury proceedings here.
Applying these standards to this case, the People were not required to introduce defendant’s statements at issue in the Grand Jury. The exculpatory statements were not a part of a single statement in which inculpatory and exculpatory thoughts were expressed (see, People v Isla, 96 AD2d 789 [prosecutor omitted part of sentence in defendant’s confession where defendant stated that he fired gun in self-defense]). As this Court noted in People v Brewster (63 NY2d 419, 422), "The proper purpose of an indictment is to bring a defendant to trial upon a prima facie case which, if unexplained, would warrant a conviction”.
The dissent’s conclusion that the Grand Jury proceeding was unfair is untenable. This is particularly true since defen *514 dont had the absolute right, upon waiving immunity, to testify before the Grand Jury and to present exculpatory versions of the facts (see, CPL 190.50).
Defendant’s reliance on People v Pelchat (62 NY2d 97) is misplaced. Defendant argues that the prosecutor’s function is not that of seeking convictions, but to insure "that justice is done” (id., at 105). In Pelchat, the police officer testifying at the Grand Jury proceeding misperceived the prosecutor’s question and named the defendant as one of the individuals he observed transporting contraband at the stakeout site. The officer was under the impression that the prosecutor had asked for the names of the individuals arrested at the site. This Court held that because the officer informed the prosecutor of his error and the prosecutor, notwithstanding the officer’s revelation, continued to act upon the indictment, dismissal of the indictment was necessary. That decision was appropriate where the Grand Jury was actually indicting the defendant based upon information the prosecutor knew to be false. Here the prosecutor did not seek the Grand Jury’s indictment based upon false information nor was his conduct otherwise unfair.
Defendant’s reliance on People v Valles (62 NY2d 36) and People v Lancaster (69 NY2d 20, cert denied 480 US 922) as requiring a justification charge is also misplaced. In Valles, primarily distinguishing between charge requirements for exculpatory and mitigation defenses, this Court held that in a prosecution for murder, the prosecutor was not obligated to submit the mitigating defense of extreme emotional disturbance to the Grand Jury. We distinguished the obligation of the prosecutor when an exculpatory defense was available and intimated that an exculpatory defense charge should be submitted where such defense is involved. In People v Lancaster, however, we indicated, "Valles does not require that every complete defense suggested by the evidence be charged to the Grand Jury; rather 'whether a particular defense need be charged depends upon its potential for eliminating a needless or unfounded prosecution’ ” (People v Lancaster, 69 NY2d 20, 27, supra, quoting People v Valles, 62 NY2d 36, 38, supra). The Court explained that where a defense of justification was established by the evidence, a charge concerning that potential defense would be required because the defendant’s conduct could no longer be considered criminal (id., at 27-28). The Court indicated, however, that the evidence must establish that defense, requiring more from a defendant than a mere *515 allegation. Here, the evidence before the Grand Jury was not sufficient to require a justification charge.
As we indicated in Lancaster (supra) the People maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused (id,., at 25-26). Defendant failed to exercise her right to bring exculpatory evidence to the Grand Jury’s attention by her own testimony or that of others testifying on her behalf (see, People v Lancaster, 69 NY2d 20, 26, supra; CPL 190.50 [5], [6]). In addition, defendant submitted at least three different accounts of the events surrounding her husband’s death. The People were not obligated to present every version to the Grand Jury.
Accordingly, the order of the Appellate Division should be affirmed.