Bellacosa, J.
(dissenting). We are satisfied that the trial court’s particularized assessment of the entire record evidence and circumstances and conditional termination of this prosecution do not rise to the level of error as a matter of law. Its *687 conclusion that the integrity and fairness of this Grand Jury action was impaired by the manner and procedures with which the prosecutor handled the presentment (CPL 210.20 [1] [c]; 210.35 [5]) is amply supported by the record. Thus, we respectfully dissent and would reverse and reinstate the trial court’s dismissal of the indictment, with leave to the People to represent.
We agree that defendant’s proffered per se rule should not be adopted. That approach would inappropriately and unnecessarily restrict prosecutorial authority to present multiple, related matters to a Grand Jury, solely because an arrested citizen makes a cross complaint against an involved police officer. The long-standing theoretical and operational principle that the People retain wide discretion to present evidence and witnesses to the Grand Jury is thus not in dispute among us (see, e.g., Matter of Morgenthau v Altman, 58 NY2d 1057, 1059; People v Lancaster, 69 NY2d 20, 25, cert denied 480 US 922; People v Stepteau, 81 NY2d 799, 800; People v Mitchell, 82 NY2d 509, 515). It is certainly not the fulcrum of our difference of view about the analysis and outcome of this case.
Rather, this dissenting expression springs from the undue restriction correlatively imposed by the rule of this case on trial court authority to supervise the proper and fair conduct of Grand Jury proceedings and to review and remedy defects and prosecutorial overreachings (People v Pelchat, 62 NY2d 97, 106; CPL 190.25 [6]). Even as to this concern, we have no disagreement with respect to the role of a District Attorney as legal advisor to the Grand Jury, a power that vests that executive officer with substantial, virtually unilateral control over Grand Jury proceedings (see, CPL 190.25 [6]; 190.55; People v Di Falco, 44 NY2d 482, 487).
This Court has, however, consistently emphasized that prosecutorial discretion is not absolute or final and that the "duty of fair dealing” in Grand Jury proceedings owed to a potential accused is a right and protection afforded through appropriate judicial oversight (People v Pelchat, supra, 62 NY2d, at 105; see, People v Zimmer, 51 NY2d 390, 395-396). Courts are, therefore, statutorily and precedentially authorized to dismiss indictments for overzealous violation of this correlative value when a prosecutorial presentment fails to conform to the requirements of CPL article 190 "to such a degree that the integrity thereof is impaired and prejudice to the defendant may result” (CPL 210.35 [5]; 210.20; see, People v Williams, 73 NY2d *688 84, 90). Moreover, it is not the burden of an accused or of us in dissent to propose "alternative” procedural rubrics for a prosecutorial failure to measure up to those high and important standards (majority opn, at 686).
The assessment of the prejudicial impairment to the Grand Jury process requires trial courts to review the entire record of the particular case in light of all the circumstances surrounding the proceeding (People v Huston, 88 NY2d 400, 409; People v Sayavong, 83 NY2d 702, 709). When appropriate, "a review of the Grand Jury minutes might be necessary in order to demonstrate the possibility of prejudice” (People v Di Falco, 44 NY2d 482, 488, supra [emphasis added]). To be sure, the "mere showing of a defect in the Grand Jury proceedings” will not suffice (id.; People v Huston, supra, 88 NY2d, at 409; compare, People v Mitchell, 82 NY2d 509, 513-514, supra).
Using these general and nuanced guideposts and rejecting the per se proposals of the defendant as well as that of the prosecution, we turn to the Trial Judge’s careful and thorough review of the record and still-sealed Grand Jury minutes in this case. That court concluded that "the likelihood of prejudice” to defendant was sufficient to warrant dismissal of the indictment (People v Huston, supra). The court assayed correctly, in our view, that this so-called "dual slip” procedure created the possibility of prejudice to the defendant based on the whole factual evolvement and legal presentment. The double fault of this case is that (1) the Grand Jury was not afforded the full and fair opportunity to evaluate the entire criminal activity and interaction of the parties under its most unusual configuration, and (2) defendant’s right, opportunity and decision concerning the presentment of his side of the case and story were prejudicially compromised by the strategic maneuvers of the prosecution side (see, People v Evans, 79 NY2d 407, 414; CPL 190.50 [5]; People v Mitchell, supra, 82 NY2d, at 518 [dissenting opn]).
The trial court’s assessment of the Grand Jury consideration of this matter reveals that, at best, there was a bifurcated, temporally distinct and seriously skewed presentment of defendant’s alleged criminal activity in relation to the conduct of the shooter police officer. The record is, at worst, bare and, at least, ambiguous that an authentic "dual slip” presentment occurred here. Yet, that procedural advantage is what the prosecutor, the amicus District Attorneys’ Association, and Appellate Division so assiduously strain to preserve with a per se unilateral control.
*689 The first so-called "slip” was introduced as "the People * * * against Matthew Adessa.” The related "dual” subject was presented to the Grand Jury as the "[ijnvestigation in the matter — the shooting of Matthew Adessa.” Apparently, a justification instruction relating to the police officer's conduct was acontextually tacked onto some other general instructions and definitions given to the Grand Jury at some different time from the testimonial evidence. While the transcript is hard to pin down, the Grand Jury evidently voted no true bill (or it voted not to investigate) as to the officer who shot defendant-appellant three times during one part of the episode at issue and only then curiously abandoned any further pursuit of the wounded, initial bat-wielding aggressor, who was allowed to flee in his car to reach a hospital on his own. The facts and prosecution, solely against the defendant-appellant, generate more questions than they answer, even for early-procedural-stage skirmishings. This is a case that does not call on anyone for an ultimate judgment of the conduct of the contending protagonists. The separate but sequential frames of conduct in the chase, confrontation, shooting and peculiar disengagement suggest that neither contender is wholly without blame of some kind. But this is not a morality play about good versus evil or whether one or the other participant is touched by an angel. It is about simple fairness of the adversarial, accusatory process in getting at the truth and the neutral Magistrate guarding and enforcing the correlative rights and duties of the parties before the tribunal.
Importantly, therefore, the trial court took the full measure of this over-all matter at this initiatory stage and discharged its directly relevant responsibility and power by concluding, on appropriate defense motion, that there was a likelihood that defendant’s rights and procedural protections were prejudiced (People v Sayavong, 83 NY2d 702, 711, supra; see also, People v Huston, 88 NY2d 400, 409, supra; CPL 210.35 [5]). The test is not "inherent,” "palpable,” or "cognizable” prejudice (majority opn, at pp 679, 684, 686); it is likelihood and possibility of prejudice, a quantification the fact-finding court had just cause to find as it did on this record. Thus, in this case there is no justification for the appellate courts to disturb or nullify that judiciously founded nisi prius ruling and its carefully calibrated remedy allowing re-presentment. The trial court in this case saw enough to disturb its sense of justice and fairness in the particular presentment. Therefore, sufficient reason filtering through this sparse record for the appellate courts provides enough to sustain the trial court’s probing scrutiny and ruling.
*690 Additionally, trial courts are not limited to examining a defendant’s specific assertions of unfairness in these situations, but are also empowered to search the record and examine the more general claims an accused attempts to assert. This is so because in most cases, as in the case at bar, accuseds have no access to the confidential Grand Jury minutes and, therefore, are seriously disadvantaged when they try to speculate on specific challenges to the propriety of a prosecutor’s usually unilateral presentation to a Grand Jury.
Frankly, that is one reason why the initial role of the trial courts in reviewing otherwise secret proceedings is so central and special under this Court’s precedents and jurisprudence. They are the primary, on-the-scene gatekeepers against prosecutorial overreaching in customarily shielded proceedings. Let us be sure about what the trial court did — it rejected defendant’s arguments for a general per se prohibition of dual presentments. We agree with that. It also rejected any notion of a defense entitlement to step-by-step notice of strategic prosecutorial actions. We agree with that, too. But highly significantly, it found that the particular prosecutorial activities in this case impaired the integrity of this Grand Jury to the detriment of defendant’s protections by prejudicially compromising defendant’s informed exercise of his statutory rights (see, People v Evans, 79 NY2d 407, 414, supra; contrast; People v Mitchell, 82 NY2d 509, 513-514, supra).
In sum, the trial court applied standard operating principles of "fair dealing” applicable to any Grand Jury proceeding, whether characterized or classified as "dual slip” or anything else. Its type of fact-specific, case-by-case inquiry, necessary to weigh the fairness of this Grand Jury proceeding, is appropriate and supportable, not as a matter of "deference” to trial courts, but based on the record here and given the disproportionate influence of protagonists before "independent” and "secret” Grand Juries (see, e.g., People v Robinson, 89 NY2d 648, 655, n 2 [decided today]; majority opn, at 685), especially given the curiously unusual circumstances that unfolded here, factually and presentment-wise. As this Court stated unanimously in People v Evans'.
"The obligation under GPL 190.50 (5) (a) to provide notice and, therefore, the concomitant right to give testimony even perhaps after an indictment has been voted but before it is filed (see, e.g, People v Young, 138 AD2d 764; People v Skrine, 125 AD2d *691 507), is an added window given to defendants. However, the District Attorney acquires no correlative right to control or restrict the timing of the exercise of the right. This is especially important because defendant’s appearance before a Grand Jury is the singular incursion on the prosecutor’s otherwise exclusive stronghold” (id., at 414; contrast, People v Mitchell, 82 NY2d 509, supra).
Finally, we believe it should not be said as a matter of law that the trial court erred or abused its authority based on the whole of the known, official record of proceedings in this case. Indeed, the trial court is likely to face the responsibility, on the reinstatement of this indictment against defendant, to take an appropriately judicious look, on proper motion pursuant to CPL 210.30 to inspect or unseal and turn over the Grand Jury minutes. The re-presentment might be then purged of the strongly demonstrated and realistic possibility and potentiality for prejudice that permeates this case.
The correctness of the trial court order dismissing the indictment, with leave to the prosecution to resubmit and fairly present the accusations against defendant is well founded.
Chief Judge Kaye and Judges Levine and Wesley concur with Judge Titone; Judge Bellacosa dissents and votes to reverse in a separate opinion in which Judges Smith and Ciparick concur.
Order affirmed.