| **People v Martinez** |
|:---:|
| 2023 NY Slip Op 34722(U) |
| August 23, 2023 |
| County Court, Westchester County |
| Docket Number: Indictment No. 71205-23/001 |
| Judge: Robert J. Prisco |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

COUNTY COURT: STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

       -against-

RICHARD MARTINEZ,

                     Defendant.
-----------------------------------------------------------------------x
ROBERT J. PRISCO, J.

**DECISION & ORDER**

Indictment No. 71205-23/001

Defendant **RICHARD MARTINEZ** is charged by Indictment Number 71205-23/001 with one count of Attempted Assault in the First Degree pursuant to Penal Law [PL] §§ 110 and 120.10 (1) [Count One], one count of Assault in the Second Degree pursuant to PL § 120.05 (2) [Count Two], one count of Criminal Possession of a Weapon in the Third Degree pursuant to PL § 265.02 (1) [Count Three], one count of Criminal Possession of a Weapon in the Fourth Degree pursuant to PL § 265.01 (2) [Count Four], and one count of Menacing in the Second Degree pursuant to PL § 120.14 (1) [Count Five]. In sum and substance, the charges pertain to Defendant's alleged possession, display and use of a dangerous instrument against another individual, and the injury allegedly sustained by that individual as a result thereof. It is alleged that the charged offenses occurred in the vicinity of 185 Main Street, in the Village of Ossining, at approximately 3:23 a.m., on September 9, 2022.

On May 15, 2023, Defendant was arraigned in the Westchester County Court on the charges contained in Indictment Number 71205-23/001. Attached to the Indictment is an Information accusing Defendant of having previously been convicted in the Westchester County Court of Criminal Possession of a Controlled Substance in the Fifth Degree in violation of PL § 220.06 (1), on or about July 6, 2017. Also attached to the Indictment are two (2) CPL § 710.30



FILED

AUG 24 2023

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

1

(1) (a) Notices,[1] six (6) CPL § 710.30 (1) (b) Notices,[2] and the People's Demand for a Notice of Alibi pursuant to CPL § 250.20.

On May 16, 2023, the People served and filed, via email, a Certificate of Compliance pursuant to CPL § 245.50 (1), with an attached "Discovery Disclosure Index" that identifies the items and materials that have reportedly been disclosed or provided to defense counsel. Also attached to the Certificate of Compliance is a demand for Reciprocal Discovery pursuant to CPL § 245.20 (4).[3] Within the People's Certificate of Compliance is a "Statement of Readiness," wherein the People state that they "confirm and announce their readiness for trial on all counts charged."

On July 6, 2023, the People served and filed, via email, a Supplemental Certificate of Compliance, which states that the Grand Jury minutes and exhibits were provided to defense counsel. Within the Supplemental Certificate of Compliance is a "Statement of Readiness," wherein "[t]he People confirm and announce their readiness for trial on all counts charged."[4]

On July 25, 2023, the Court received, via email, Defendant's Notice of Motion, an Affirmation and a Memorandum of Law, seeking various forms of judicial intervention and relief.

On August 9, 2023, the Court received the People's Affirmation in Opposition and a Memorandum of Law in response to Defendant's motion for omnibus relief.

The Court is also in receipt of an unredacted certified copy of the stenographic transcript

---

[1] The first CPL § 710.30 (1) (a) Notice pertains to electronically recorded oral statements that were allegedly made by Defendant, "[s]tarting in the vicinity of Spring Street & Broad Avenue and ending in the Village of Ossining Police Department Headquarters," beginning at approximately 3:33 a.m., on September 9, 2022. The second CPL § 710.30 (1) (a) Notice pertains to electronically recorded oral statements that were allegedly made by Defendant at the Village of Ossining Police Department Headquarters, beginning at approximately 10:11 a.m., on September 9, 2022.

[2] The first four CPL § 710.30 (1) (b) Notices pertain to identifications that were allegedly made subsequent to the commission of the crime, without a lineup, at Ossining Police Department Headquarters, and in the vicinity of Spring Street and Broad Avenue, in the Village of Ossining, on or about September 9, 2022. The fifth and sixth CPL § 710.30 (1) (b) Notices pertain to video identifications that were allegedly made in the Westchester County District Attorney's Office, on or about September 19, 2022.

[3] During a Court appearance on June 9, 2023, defense counsel acknowledged receipt of the People's Certificate of Compliance dated May 16, 2023. Although the Grand Jury minutes were still outstanding, the People confirmed their readiness for trial on the record when the Court made inquiry thereof pursuant to CPL § 30.30 (5).

[4] During a Court appearance on July 28, 2023, defense counsel acknowledged receipt of the Supplemental Certificate of Compliance dated July 6, 2023. The People again confirmed their readiness for trial on the record when the Court made inquiry thereof pursuant to CPL § 30.30 (5).

of the Grand Jury proceeding dated April 26, 2023, along with copies of the Grand Jury exhibits that were received in evidence.

After consideration of the above referenced submissions and unredacted certified stenographic transcript, the Court decides Defendant's Motion as follows:

**1. MOTION FOR INSPECTION OF THE GRAND JURY MINUTES AND DISMISSAL OR REDUCTION OF THE CHARGES CONTAINED IN INDICTMENT NUMBER 71205-23/001 DUE TO THE LEGAL INSUFFICIENCY OF THE EVIDENCE PRESENTED AND THE INSTRUCTIONS PROVIDED.**

Defendant moves for "[i]nspection and reduction or dismissal of the Indictment pursuant to CPL §§ 210.20 and 210.30 due to the legal insufficiency of the proof submitted to the grand jury" (*see* Point 1 of Defendant's Notice of Motion). Citing CPL §§ 210.20 (1) (b) and 210.30, Defendant requests that the Court also "inspect the Grand Jury minutes to determine, if, in fact, the evidence was sufficient" (*see* Page 2 of Defendant's Memorandum of Law).

Citing CPL § 210.20 (1) and (2), Defendant further requests that the Court review the Grand Jury minutes "to determine if the counts of the indictment ought not to be reduced to lesser charges (*see* Page 2 of Defendant's Memorandum of Law). "In addition, Counsel asks that the Grand Jury minutes be inspected to determine if the testimony given in the Grand Jury adequately described the specific actions of the defendant and that such testimony was legally sufficient to sustain the charges against the defendant" (*Id.* at Page 3). Further, "the defense requests that this Court inspect the minutes to determine if the Grand Jury was properly instructed" (*Id.*). Finally, Defendant argues that the affirmative defense of justification should have been presented to the grand jury, and that the People's failure to do so requires dismissal of the indictment (*see* Pages 4-7 of Defendant's Memorandum of Law).

In their response, the People consent to an in-camera inspection of the Grand Jury minutes by the Court (*see* Point C, Page 2, of the People's Memorandum of Law), contend that the indictment is supported by legally sufficient evidence (*Id.* at Page 3), and assert that "Defendant has failed to meet [his] high burden of showing the existence of any error in the grand jury proceeding which rendered it defective" (*Id.*). The People contend there was no basis upon which to charge the defense of justification, as "[t]he videos in this case show that defendant did not act

3

[* 3]

in self-defense" (*Id.* at Page 6), and "the evidence shows, unequivocally, that defendant was the initial aggressor, not Pareja" (*Id.* at Page 9). The People further contend "Pareja's use of pepper spray did not constitute deadly force (neither subjectively nor objectively)" (*Id.* at Page 12). Finally, the People claim that "should this Court find that defendant's belief in the need to use deadly physical force was both subjectively and objectively reasonable and that Pareja's administration of pepper spray constituted deadly physical force, a justification defense was still unwarranted as defendant had a duty to retreat (Penal Law § 35.15 [2] [a])" (*Id.* at Page 13).

To the extent that Defendant is requesting the Grand Jury minutes in their entirety, CPL § 245.20 (1) (b) provides for automatic discovery of "[a]ll transcripts of the *testimony* of a person who has testified before a grand jury" (emphasis added). "The language of the statute is clear and unambiguous; it requires the People to turn over the transcript of the testimony" (*People v Sellars*, 73 Misc3d 248, 250 [County Ct, Orange County 2021]; *see People v Askin*, 68 Misc3d 372, 382 [County Ct, Nassau County [2020]; *People v Rondon*, 67 Misc3d 1228(A), 2020 NY Slip Op. 50663(U) [County Ct, Orange County 2020]). Similarly, CPL § 210.30 (3), which addresses motions to inspect grand jury minutes, speaks only to the release of "grand jury *testimony*" (emphasis added). Accordingly, as there exists no statutory authority for the release to Defendant of those portions of the Grand Jury minutes that constitute colloquy or instructions, and as the People have complied with the discovery mandate of CPL § 245.20 (1) (b) by providing the defendant with the transcript of the grand jury testimony on July 6, 2023, to the extent that Defendant is requesting the Grand Jury minutes in their entirety, such request is denied.

The Court has conducted an in-camera review of the entirety of the Grand Jury proceeding, having examined an unredacted certified copy of the stenographic transcript of the April 26, 2023 presentation.

On April 26, 2023, prior to the commencement of the given sworn testimony, the People specifically inquired of and confirmed with the foreperson that twenty-three (23) grand jurors were present. As the presentation of this matter took place without interruption or recess, the Court is satisfied that the twenty-three (23) grand jurors who deliberated and voted on the charges contained in Indictment Number 71205-23/001 were present throughout the one-day presentation thereof.

"Courts assessing the sufficiency of the evidence before a grand jury must evaluate 'whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted –

4

and deferring all questions as to the weight or quality of the evidence – would warrant conviction'" (*People v Mills*, 1 NY3d 269, 274-275 [2003], quoting *People v Carroll,* 93 NY2d 564, 568 [1999]; *see People v Edwards*, 36 NY3d 946, 947 [2020]; *People v Deleon*, 34 NY3d 965, 966 [2019]; *People v Bello*, 92 NY2d 523, 525 [1998]; *People v Booker*, 164 AD3d 819, 820 [2d Dept 2018]; *People v Pino*, 162 AD3d 910, 910-911 [2d Dept 2018]; *People v Hulsen*, 150 AD3d 1261, 1262 [2d Dept 2017], *lv. denied* 30 NY3d 950 [2017]; *People v Flowers,* 138 AD3d 1138, 1139 [2d Dept 2016]). Legally sufficient evidence is "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL § 70.10 (1); *see People v Deleon*, 34 NY3d at 966; *People v Mills,* 1 NY3d at 274; *People v Harwood*, 183 AD3d 1281, 1282 [4th Dept 2020]; *People v Booker*, 164 AD3d at 820; *People v Pino*, 162 AD3d at 911; *People v Arcila*, 152 AD3d 783, 784 [2d Dept 2017], *lv. denied* 30 NY3d 978 [2017]; *People v Hulsen*, 150 AD3d at 1262; *People v Franov*, 146 AD3d 978, 979 [2d Dept 2017]). "In the context of a Grand Jury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (*People v Gaworecki*, 37 NY3d 225, 230 [2021], quoting *People v Grant*, 17 NY3d 613, 616 [2011]; *see People v Mills,* 1 NY3d at 274; *People v Bello*, 92 NY2d at 526; *People v Holloway*, 210 AD3d 1007, 1008 [2d Dept 2022]; *People v Castro*, 202 AD3d 815, 816 [2d Dept 2022]; *People v Booker*, 164 AD3d at 820). This Court's inquiry is "limited to 'whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes,' and whether 'the Grand Jury could rationally have drawn the guilty inference'" (*People v Bello*, 92 NY2d at 526, quoting *People v Deegan,* 69 NY2d 976, 979 [1987]; *see People v Castro*, 202 AD3d at 816; *People v Booker*, 164 AD3d at 821; *People v Pino,* 162 AD3d at 911; *People v Arcila*, 152 AD3d at 784).

Here, the evidence presented to the Grand Jury, when viewed in the light most favorable to the People, was legally sufficient to establish and support the charges contained in Indictment Number 71205-23/001.

A Grand Jury proceeding is "defective," warranting dismissal of the indictment, only where the "proceeding . . . fails to conform to the requirements of CPL Article 190 to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL § 210.35 (5); *see People v Jimenez*, 39 NY3d 74 [2022]; *People v Elmore*, 211 AD3d 1536, 1539 [4th Dept 2022]; *People v Palma*, 208 AD3d 801, 802 [2d Dept 2022]; *People v Sealy*, 181 AD3d 893, 894 [2d Dept 2020], *lv. denied* 35 NY3d 1070 [2020]; *People v Arevalo*, 172 AD3d 891, 892 [2d Dept

5

2019]; *People v Williams*, 171 AD3d 804, 805 [2d Dept 2019]). "'The exceptional remedy of dismissal of an indictment is warranted only where prosecutorial misconduct, fraudulent conduct or errors created a possibility of prejudice" (*People v Palma*, 208 AD3d at 802, quoting *People v Addimando*, 197 AD3d 106, 121 [2d Dept 2021]; *see People v Huston*, 88 NY2d 400, 409 [1996]; *People v Sealy*, 181 AD3d at 894; *People v Williams*, 171 AD3d at 805; *People v Burch*, 108 AD3d 679, 680 [2d Dept 2013], *lv. denied* 22 NY3d 1087 [2014]; *People v Thompson*, 81 AD3d 670, 671 [2d Dept 2011], *aff'd* 22 NY3d 687 [2014]). Here, the Court finds that no such misconduct, conduct or errors occurred and Defendant's argument that the People's failure to provide a justification charge to the Grand Jury necessitates dismissal of the indictment is without merit.

While "the People maintain broad discretion in presenting their case to the grand jury and need not...present all of their evidence tending to exculpate the accused" (*People v Mitchell*, 82 NY2d 509, 515 [1993], citing *People v Lancaster*, 69 NY2d 20, 25–26 [1986], *cert. denied* 480 US 922 [1987]; *see People v Moses*, 197 AD3d 951, 952-953 [4th Dept 2021], *lv. denied* 37 NY3d 1097 [2021]; *People v Morel*, 131 AD3d 855, 859-860 [1st Dept 2015], *lv. denied* 26 NY3d 1147 [2016]; *People v Goldston*, 126 AD3d 1175, 1177 [3d Dept 2015], *lv. denied* 25 NY3d 1201 [2015]; *People v Pickens*, 60 AD3d 699, 703 [2d Dept 2009], *lv. denied* 12 NY3d 928 [2009]), "a prosecutor should instruct the Grand Jury on any complete defense supported by the evidence which has the potential for eliminating a needless or unfounded prosecution" (*People v Jimenez*, 189 AD3d 882, 884 [2d Dept 2020], *aff'd* 39 NY3d 74 [2022], quoting *People v Grant*, 113 AD3d 875, 876 [2d Dept 2014]; *see People v Tunit*, 149 AD3d 1110, 1111 [2d Dept 2017]; *People v Wilson*, 228 AD2d 708, 709 [2d Dept 1996]). "'The failure to charge justification constitutes reversible error only when the defense is supported by a *reasonable* view of the evidence - not by any view of the evidence, however artificial or irrational'" (*People v Jimenez*, 189 AD3d at 884, quoting *People v Rivers*, 300 AD2d 63, 64-65 [1st Dept 2002]; *see People v Butts*, 72 NY2d 746, 750 [1988]; *People v Forde*, 140 AD3d 1085, 1087 [2d Dept 2016], *lv. denied* 28 NY3d 929 [2016]; *People v Torres*, 252 AD2d 60, 65 [1st Dept 1999], *lv. denied* 93 NY2d 1028 [1999]). While the record must be viewed in the light most favorable to the defendant in determining whether the evidence supports such a defense (*see People v Enoksen*, 175 AD3d 624, 625 [2d Dept 2019], *lv. denied* 34 NY3d 1016 [2019]; *People v LaRoche*, 162 AD3d 684, 685 [2d Dept 2018]; *People v Tunit*, 149 AD3d at 1111; *People v Samuels*, 12 AD3d 695, 698 [2d Dept 2004]), dismissal of an indictment is not warranted when based solely upon the "mere allegation" from a

[* 6]

defendant (*People v Mitchell*, 82 NY2d at 514-515; *see People v Edwards*, 32 AD3d 281, 282 [1st Dept 2006], *lv. denied* 7 NY3d 901 [2006]; *People v Brunson*, 226 AD2d 1093, 1094 [4th Dept 1996], *lv. dismissed* 88 NY2d 981 [1996]; *People v Flores*, 219 AD2d 40, 45-46 [1st Dept 1996]).

Viewing the grand jury evidence in the light most favorable to Defendant in the case at bar, this Court finds that there was no reasonable view of such evidence to support a justification charge.

"With respect to the defense of justification under Penal Law § 35.15 (2) (a), 'a defendant is justified in using deadly physical force upon another only if that defendant reasonably believes that such other person is using or about to use deadly physical force'" (*People v Swanton*, 216 AD3d 1441, 1442 [4th Dept 2023], quoting *People v Brown*, 33 NY3d 316, 320 [2019]; *see People v Anderson*, 36 NY3d 1109, 1110 [2021]; *People v Agosto*, 203 AD3d 841, 842 [2d Dept 2022], *lv. denied* 38 NY3d 1068 [2022]; *People v Singh*, 197 AD3d 1332, 1335 [2d Dept 2021]). "The Penal Law defines 'deadly physical force' as 'physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury'" (*People v Vega*, 33 NY3d 1002, 1004 [2019], quoting Penal Law § 10.00 [11]; *see People v Lugg*, 124 AD3d 679, 679-680 [2d Dept 2015], *lv. denied* 25 NY3d 990 [2015]; *People v Bradley*, 297 AD2d 640, 641 [2d Dept 2002], *lv. denied* 99 NY2d 556 [2002]), and "deadly physical force 'encompasses not merely the striking of the first blow or infliction of the first wound,' but also 'acts by a person that cause the defendant reasonably to believe that the defendant is facing the imminent threat of deadly force'" (*People v Swanton*, 216 AD3d at 1442, quoting *People v Brown*, 33 NY3d at 322; *see People v Valentin*, 29 NY3d 57, 60 [2017]).

"However, the Penal Law further provides that, for purposes of the defense of justification under Penal Law § 35.15 (2) (a), 'a defendant is never justified in using deadly physical force if that defendant is the initial aggressor,' i.e., 'the first person in an altercation who uses or threatens the imminent use of deadly physical force'" (*People v Swanton*, 216 AD3d at 1442-1443, quoting *People v Brown*, 33 NY3d at 320; *see* PL § 35.15 [1] [b]; *People v Petty*, 7 NY3d 277, 285 [2006]; *People v Irizarry*, 200 AD3d 428, 429 [1st Dept 2021], *lv. denied* 37 NY3d 1161 [2022]; *People v Addison*, 184 AD3d 1099, 1100 [4th Dept 2020], *lv. denied* 35 NY3d 1092 [2020]). "'If mere physical force is employed against a defendant, and the defendant responds by employing deadly physical force, the term initial aggressor is properly defined as the first person in the encounter to use deadly physical force,'" thereby rendering the defense of justification inapplicable (*People v*

7

*Swanton*, 216 AD3d at 1443, quoting *People v Brown*, 33 NY3d at 321; *see People v Irizarry*, 200 AD3d at 429; *People v Smith*, 195 AD3d 1416, 1417 [4th Dept 2021]; *People v McWilliams*, 48 AD3d 1266, 1267 [4th Dept 2008], *lv. denied* 10 NY3d 961 [2008]).

Here, the alleged victim testified that Defendant's "demeanor was [ ] very aggressive" when he approached, that the defendant "seemed to have a closed fist", and that it "look[ed] like [Defendant] was holding something" (*see* Page 69, Lines 24-25, and Page 70, Lines 2-4, of the Grand Jury transcript dated April 26, 2023).[5] The victim further testified he "saw that this individual had the intention of hitting [him] by the way that [he] looked at him ... [a]nd then, seconds thereafter, he lunged at [the victim]," at which time the victim "took a step back and felt an immediate hit on [his] arm, followed up by extreme pain" (*Id.* at Page 70, Lines 5-10). The victim testified that he carries "[pepper] spray for self-defense," that he used it on the defendant, "but it really had no effect on [Defendant]" (*Id.* at Page 71, Lines 2-10). The victim explained that he pepper sprayed the defendant "before" Defendant stabbed him because "he was already lunging at [the victim]" (*Id.* at Page 93, Lines 1-3 and 17-20).

The dashcam surveillance video depicting the area in front of 185 Main Street, in the Village of Ossining, which was received in evidence as Grand Jury Exhibit 1, fails to support Defendant's contention that the victim was the initial aggressor. While the video does show that the victim pepper sprayed the defendant, it also depicts Defendant immediately lunging at the victim afterward and becoming the initial aggressor when he employs deadly physical force against the victim by stabbing him.

Further, while "there appears to be no appellate authority in New York addressing whether a noxious chemical spray - by whatever name it is marked - constitutes a dangerous instrument"[6]

---

[5] Javier Roldan, who was also allegedly at the scene, testified that Defendant "seemed to be approaching with a closed fist" and "had something in his hand" (*see* Page 50, Lines 8-11, of the Grand Jury transcript dated April 26, 2023).

[6] While Defendant cites *People v Lu Duca*, 292 AD2d 851 [4th Dept 2002], *lv. denied* 98 NY2d 652 [2002], to support his contention that pepper spray can be a dangerous instrument (*see* Page 7 of Defendant's Memorandum of Law), "there is no holding in that case, or even *dicta* for that matter, that addresses whether pepper spray either in and of itself or the manner it was used, could constitute a dangerous instrument capable of causing *serious* physical injury" (*People v Sandel*, 61 Misc.3d 843, 848 [Sup Ct, New York County 2018]).

8

(*People v Sandel*, 61 Misc.3d 843, 847 [Sup Ct, New York County 2018]),[7] because "almost any weapon *could* cause death or serious physical injury … [m]ore proof than [capability] is required to show that an instrument is 'readily capable' of causing such consequence" (*People v Hall*, 18 NY3d 122, 129 [2011]; *see People v Carter*, 53 NY2d 113, 116 [1981]; *People v Abussalam*, 196 AD3d 1000, 1005 [3d Dept 2021], *lv. denied* 37 NY3d 1144 [2021]; *People v Matthews*, 159 AD3d 1111, 1115 [3d Dept 2018]).  Therefore, "'[t]he object itself need not be inherently dangerous'" as "'[i]t is the temporary use rather than the inherent vice of the object which brings it within the purview of the statute'" (*People v Abussalam*, 196 AD3d at 1005, quoting *People v Carter*, 53 NY2d at 116).  Here, Detective Reginald Armstrong and Police Officer William Peffers testified that on September 9, 2022, they observed the defendant's "eyes were red and puffy" and "watery" (*see* Page 21, Lines 12-13, and Page 104, Lines 20-21, of the Grand Jury transcript dated April 26, 2023), but did not testify as to any serious physical injuries caused by the pepper spray.  While "[those] are very unpleasant things to experience, [ ] they are not 'serious physical injury' as the statute defines it" (*People v Hall*, 18 NY3d at 128-129; *see* CPL § 10.00 (10)).

Accordingly, while the victim appears to be the initiator of physical force, Defendant was the first person in the encounter to use deadly physical force, i.e., the initial aggressor, thereby rendering the defense of justification inapplicable.

Moreover, unlike the defendant in *People v Samuels*, 12 AD3d 695 [2d Dept 2004], who provided testimonial evidence before the Grand Jury supporting her justification defense, the Grand Jury in this case did not hear any testimony that would have supported a justification charge. Not only were there no witnesses with direct knowledge of the incident who testified in support of Defendant's contention, but the defendant himself, who clearly had such knowledge of the incident and of any circumstances that might have warranted such instructions, chose not to exercise his right to testify before the Grand Jury (*see People v Mitchell*, 82 NY2d at 515, citing *People v Lancaster*, 69 NY2d at 26; *People v Morel*, 131 AD3d at 860).

---

[7] While the Court in *People v Sandel*, held that "a rational trier of fact could have found beyond a reasonable doubt that the defendant's use of a noxious chemical spray constituted the use of a dangerous instrument which was readily capable of causing death or serious physical injury," the resulting injuries from the pepper spray use in that case included, but were not limited to, the victim's inability to open her eyes for thirty seconds, bleeding of the eyes, emergency room medical treatment for pain, vision impairment and overnight hospitalization (*see People v Sandel*, 61 Misc.3d at 853-854).

9

Thus, there was no reasonable view of the evidence presented in the Grand Jury warranting an instruction on justification and the integrity of the Grand Jury was not impaired by the People's failure to so instruct.

Further, while a prosecutor is required to instruct the grand jury on the law with respect to matters before it (*People v Valles*, 62 NY2d 36, 38 [1984]; *People v Tunit*, 149 AD3d 1110, 1110 [2d Dept 2017]; *People v Samuels*, 12 AD3d 695, 698 [2d Dept 2004]; *see* CPL § 190.25 (6)), "a Grand Jury need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law" (*People v Calbud, Inc.*, 49 NY2d 389, 394 [1980]; *see People v Caracciola*, 78 NY2d 1021, 1022 [1991]; *People v Batashure*, 75 NY2d 306, 311 [1990]; *People v Goetz*, 68 NY2d 96, 115 [1986]; *People v Valles* 62 NY2d 36, 38 [1984]; *People v Ruvalcaba*, 187 AD3d 1553, 1554 [4th Dept 2020], *lv. denied* 36 NY3d 1053 [2021]; *People v Tunit*, 149 AD3d at 1110; *People v Castaldo*, 146 AD3d 797, 798 [2d Dept 2017]; *People v Burch*, 108 AD3d at 680; *People v Malan-Pomaeyna*, 72 AD3d 988 [2d Dept 2010]). It is well settled that such instructions are sufficient so long as they provide "enough information to enable [the grand jury] intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime" (*People v Calbud, Inc.*, 49 NY2d at 394-395; *see People v Valles* 62 NY2d at 38; *People v Tunit*, 149 AD3d at 1110-1111; *People v Patterson*, 73 AD3d 1215, 1215 [2d Dept 2010], *lv. denied* 15 NY3d 776 [2010]; *People v Malan-Pomaeyna*, 72 AD3d at 988).

Here, after an in-camera review of the unredacted certified copy of the stenographic transcript of the Grand Jury presentation on April 26, 2023, this Court determines that the Grand Jury proceeding was not defective and that the instructions given during the presentation were legally sufficient and proper.

Accordingly, for the reasons set forth above, Defendant's motion to dismiss or reduce the charges contained within Indictment Number 71205-23/001 is denied.

## 2. MOTION FOR *SANDOVAL* AND *VENTIMIGLIA* HEARINGS.

Relying on *People v Sandoval*, 34 NY2d 371 [1974], and *People v Ventimiglia*, 52 NY2d 350 [1981], Defendant requests pre-trial hearings "to determine which, if any, prior bad acts, convictions, vicious or immoral acts will be admitted into evidence to impeach [Defendant's] credibility should he elect to testify" (*see* Point 2, Page 1, of Defendant's Notice of Motion, and

Page 1 of Defendant's Memorandum of Law). Further, Defendant contends that, "[s]hould the prosecution intend to offer direct evidence of any alleged uncharged crimes or bad acts of defendant, ostensibly for the purpose of bolstering the proof of some element of the crimes charged in this indictment, a pre-trial hearing should be held to determine the propriety of such an offer" (*see* Page 2 of Defendant's Memorandum of Law).

In response, the People acknowledge their *Sandoval* and *Ventimiglia* obligations and consent to hearings on same if such disclosure is made (*see* Points A and B, Page 1, of the People's Memorandum of Law). The People also indicate that should they "seek to introduce defendant's prior bad acts on their direct case [pursuant to *People v Molineux*, 168 NY 264 [1901]], the People will inform defense counsel and the Court and request a hearing before introducing such *Molineux* evidence" (*Id.*).

CPL § 245.20 (3) (a) provides, in substance and pertinent part, that "[t]he prosecution shall disclose to the defendant a list of all misconduct and criminal acts of the defendant not charged in the indictment, which the prosecution intends to use at trial for purposes of impeaching the credibility of the defendant." To the extent that the People seek to use any of Defendant's prior acts of misconduct or criminality on their direct case as substantive proof of any material issue in the case, CPL § 245.20 (3) (b) likewise obligates "[t]he prosecution [to] disclose to the defendant a list of all misconduct and criminal acts of the defendant not charged in the indictment, which the prosecution intends to use at trial [for such purpose]." Lastly, CPL § 245.20 (3) further requires that "the prosecution shall designate whether it intends to use each listed act for impeachment and/or as substantive proof."

As the People have concededly not yet disclosed to the defendant a list of his acts of misconduct and criminality which the prosecution intends to use at trial for impeaching his credibility or as substantive proof of any material issue in the case, nor designated their intended use thereof, this Court will not order the requested *Sandoval* and *Ventimiglia* hearings at the present time. Should the People seek to use at trial any prior acts of misconduct or criminality of the defendant for CPL § 245.20 (3) (a) or (b) purposes, they are directed to disclose to Defendant a list of all such acts of misconduct and criminality and to designate the intended purpose of each listed act. Pursuant to CPL § 245.10 (1) (b), the People "shall perform [these] supplemental discovery obligations *as soon as practicable* but not later than fifteen (15) calendar days prior to

11

the first scheduled trial date" (emphasis added). If the People do so, Defendant may renew his application to preclude the People's use of such acts of misconduct or criminality at trial or, in the alternative, request a hearing thereon to determine the admissibility thereof. If the People fail to do so, no use of such acts will be permitted at trial.

### 3. MOTION TO STRIKE THE PEOPLE'S CPL 710.30 STATEMENT NOTICES AND TO SUPPRESS STATEMENTS.

Citing CPL § 710.30 (1), Defendant moves to strike the People's statement notices on the ground that the "the prosecution has failed to notice the sum and substance of the statements and instead refer[s] to the body worn camera video to provide notice" (*see* Page 2, Paragraph 10, of Defendant's Affirmation, Point 3, Page 2, of Defendant's Notice of Motion, and Pages 8-9 of Defendant's Memorandum of Law).

Citing CPL Article 710, the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 6, of the New York State Constitution, Defendant also moves to suppress "the alleged statement[s] noticed to the defense and all fruits of such statement[s], since such statement[s] [were] involuntary and made without proper advice or knowing waiver of *Miranda* rights and [were] the product of an unlawful arrest and made in violation of the right to counsel" (*see* Point 3, Page 2, of Defendant's Notice of Motion). In the alternative, Defendant requests "that *Dunaway* and *Huntley* hearings be ordered to determine the voluntariness of these statements" (*see* Page 9 of Defendant's Memorandum of Law).

In response, the People claim that Defendant's motion to strike the People's statement notices should be denied since the notices provide "the time, place, and manner in which they were given and, when applicable, also provide the specific file name of [the] location where the video footage of defendant can be viewed" (*see* Point D, Page 15, of the People's Memorandum of Law). The People further claim that, as "defendant has moved to suppress the statements referenced in the notices ... [he] effectivity waive[d] any claim of deficiency in the People's notices" (*Id.*). Finally, the People "consent to a narrowly tailored *Huntley* hearing, after which his motion to suppress should be denied" (*see* Point E, Page 17, of the People's Memorandum of Law).

As the People's notices are in conformity with the statutory requirements of CPL § 710.30 (1) (a), in that they provide the time, place and manner in which the statements were made, and

the defendant has been referred to the "[r]ecordings [p]rovided via [the] Discovery Portal" for the substance thereof, thus allowing him to "intelligently identify them" (*People v Lopez*, 84 NY2d 425, 428 [1994]; *see People v Raszl*, 108 AD3d 1049, 1050 [4th Dept 2013]; *People v Pallagi*, 91 AD3d 1266, 1268 [4th Dept 2012], *lv. denied* 19 NY3d 970 [2012]; *People v Sturdevant*, 74 AD3d 1491, 1492 [3d Dept 2010], *lv. denied* 15 NY3d 810 [2010]), Defendant has been provided with the "opportunity to challenge before trial the voluntariness of statements [allegedly] made by him" *(People v Lopez*, 84 NY2d at 428, citing *People v O'Doherty*, 70 NY2d 479, 484 [1987]; *see People v Smajlaj*, 160 AD3d 455, 457 [1st Dept 2018], *lv. denied* 31 NY3d 1121 [2018]; *People v Lazzaro*, 62 AD3d 1035, 1035 [3d Dept 2009]; *People v Simpson*, 35 AD3d 1182, 1183 [4th Dept 2006], *lv. denied* 8 NY3d 990 [2007]; *People v Evans*, 17 AD3d 861, 862 [3d Dept 2005], *lv. denied* 5 NY3d 828 [2005]; *People v Laporte*, 184 AD2d 803, 804 [3d Dept 1992], *lv. denied* 80 NY2d 905 [1992]). Consequently, Defendant's motion to strike the People's statement notices is denied.

However, as the People have consented to a hearing to address Defendant's claims regarding the voluntariness of his alleged statements, Defendant's motion to suppress his statements is granted to the extent that hearings pursuant to *People v Huntley*, 15 NY2d 72 [1965], and *Dunaway v New York*, 442 US 200 [1979], will be conducted to determine the voluntariness and admissibility of the noticed statements.

## 4. MOTION TO STRIKE THE PEOPLE'S CPL 710.30 IDENTIFICATION NOTICES AND TO SUPPRESS IDENTIFICATION TESTIMONY.

Citing CPL Article 710, the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 6, of the New York State Constitution, Defendant moves to strike "the notice of intent to offer evidence of an out of court identification as insufficient and which violates the rights to due process of law and effective assistance of counsel" (*see* Point 4, Page 2, of Defendant's Notice of Motion, and Page 8 of Defendant's Memorandum of Law).

Defendant further moves to suppress "the alleged identification[s] and all fruits of such identification[s], since [the] identification[s] [are] inadmissible at trial because of an improperly made previous identification of the defendant" (*see* Point 4, Pages 2-3, of Defendant's Notice of Motion). Specifically, Defendant claims "[t]he identifications are not reliable because they were the product of unnecessarily suggestive identification procedures" and "[t]he identification[s] [are]

13

the tainted fruit of an unlawful arrest" (*see* Pages 9-10 of Defendant's Memorandum of Law). In the alternative, Defendant seeks a "*Wade/Dunaway* hearing" (*Id.* at Page 10).

In response, the People contend that the "[p]olice lawfully arrested defendant ... and, therefore, any identification of defendant should not be suppressed on this ground" (*see* Point F, Page 27, of the People's Memorandum of Law). With respect to the first two identifications, the People allege that "Pareja and Roldan spontaneously pointed out defendant, who was walking in front of police headquarters, to the desk officer, as the man who stabbed Pareja," and "[t]hereafter, police arranged to take Pareja and Roldan to where defendant was stopped in order to re-confirm the identification" (*Id.* at Pages 27-28). The People aver that the pointing out and subsequent show-up identifications of defendant were not unduly suggestive, and that "defendant's motion should be denied after a hearing" (*Id.* at Page 27).

With respect to the identifications made by multiple grand jury witnesses from dashcam video surveillance, the People contend that such identifications do not constitute identification procedures and therefore, notice was not required (*see* Point F, Page 29, of the People's Memorandum of Law). The People also suggest that "all identifications of defendant from dashcam video surveillance footage were confirmatory in nature," and that "defendant's identity was never in question because the individuals who identified defendant from [said footage] knew defendant well enough from the incident that led to Pareja's stabbing and thus their prior familiarity with him rendered the identifying witnesses impervious to suggestion" (*Id.* at Page 30). Finally, the People aver that "[t]he individuals who identified defendant also had an independent source for any in-court identification," as "Pareja and Roldan, who identified defendant, personally observed defendant during the commission of the crimes for which they identified him" (*Id.* at Page 31).

As to the identification notices, because they are in conformity with the statutory requirements of CPL § 710.30 (1) (b), in that said notices provide the time, place and manner in which the identifications were made (*People v Lopez*, 84 NY2d at 428; *see People v Poles*, 70 AD3d 1402, 1403 [4th Dept 2010], *lv. denied* 15 NY3d 808 [2010]; *People v Sumter*, 68 AD3d 1701, 1701 [4th Dept 2009], *lv. denied* 14 NY3d 893 [2010]; *People v Mayers*, 233 AD2d 407, 407-408 [2d Dept 1996], *lv. denied* 89 NY2d 944 [1997]; *People v Ocasio*, 183 AD2d 921, 923 [2d Dept 1992], *lv. dismissed* 80 NY2d 932 [1992]), Defendant's motion to strike such notices is

14

[* 14]

denied.

However, based upon the issues raised by the parties, Defendant's motion to suppress is granted to the extent that a hearing pursuant to *United States v Wade*, 388 US 218 [1967], and *Dunaway v New York*, 442 US 200 [1979], will be held in connection with the six (6) noticed identifications. As the People contend that the witnesses were so familiar with Defendant so as to negate any possibility of suggestiveness, the Court will also conduct a hearing pursuant to *People v Rodriguez*, 79 NY2d 445, 454 [1992], in connection with such identifications.

## 5. RESERVATION OF RIGHT TO MAKE ADDITIONAL PRE-TRIAL MOTIONS.

Defendant's request to make additional pre-trial motions (*see* Point 5, Page 3, of Defendant's Notice of Motion) is granted to the extent that, if sought, he will be required to serve and file an Order to Show Cause detailing the reason(s) why said motions were not brought in conformity with the time provisions and motions practice set forth in CPL § 255.20 (1) and (2), respectively.

However, notwithstanding the provisions of CPL § 255.20 (1) and (2), this Court will "entertain and decide on its merits, at any time before the end of the trial, any appropriate pre-trial motion based upon grounds of which the defendant could not, with due diligence, have been previously aware, or which, for other good cause, could not reasonably have been raised within the period specified in [CPL § 255.20 (1)] or included within the single set of motion papers as required by [CPL § 255.20 (2)]" (CPL § 255.20 (3); *see People v Wisdom*, 23 NY3d 970, 972 [2014]; *People v Marte,* 197 AD3d 411, 413 [1st Dept 2021]; *People v Burke*, 174 AD3d 915, 915 [2d Dept 2019]; *People v Milman*, 164 AD3d 609, 610 [2d Dept 2018]).

[* 15]

The foregoing constitutes the Decision and Order of the Court.

Dated: White Plains, New York
August 23, 2023

HONORABLE ROBERT J. PRISCO
County Court Judge

To:

HON. MIRIAM E. ROCAH
Westchester County District Attorney
111 Dr. Martin Luther King Jr. Blvd.
White Plains, New York 10601
Attn: Assistant District Attorney Catalina Blanco Buitrago

THE LEGAL AID SOCIETY OF
WESTCHESTER COUNTY
Attorney for Defendant Richard Martinez
150 Grand Street-Suite 100
White Plains, New York 10601
Attn: Katie D. Wasserman, Esq.

16

[* 16]