People v Tracy (2025 NY Slip Op 06029)

People v Tracy

2025 NY Slip Op 06029

Decided on October 30, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 30, 2025

Before: Webber, J.P., Kennedy, Pitt-Burke, O'Neill Levy, JJ. 

Ind No. 2956/18|Appeal No. 5103-5103A|Case No. 2023-00298 2023-04973|

[*1]The People of the State of New York, Respondent,
v
Geoffrey Tracy, Defendant-Appellant. 

Aidala Bertuna & Kamins, P.C., New York (John M. Leventhal of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Max Bernstein of counsel), for respondent.

Judgment, Supreme Court, New York County (Curtis J. Farber, J.), rendered January 10, 2023, convicting defendant, after a jury trial, of assault in the first degree and attempted assault in the second degree, and sentencing him to an aggregate term of eight years, and order, same court and justice, entered on or about September 18, 2023, which denied his CPL 440.10 motion to vacate the judgment, unanimously affirmed.
The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]; see also People v Baque, 43 NY3d 26 [2024]). The record supports the jury's conclusion that the victim sustained serious physical injury by suffering "physical injury which creates a substantial risk of death" (Penal Law § 10.00[10]). The victim's attending physician testified that a CT scan revealed that the victim had sustained a deep laceration to the neck, close to major blood vessels, causing internal bleeding. The physician explained that, without prompt medical attention, the victim would have continued to actively bleed into his neck, leading to suffocation and death (see e.g. People v Guzman, 212 AD3d 580 [1st Dept 2023], lv denied 39 NY3d 1141 [2023]; People v Gonzalez, 198 AD3d 543 [1st Dept 2021], lv denied 37 NY3d 1146 [2021]).
Defendant was not deprived of the right to a fair trial by the court's preclusion of his videotaped statement to police shortly after his arrest. During cross-examination, the prosecutor permissibly confronted defendant with three prior inconsistent statements from the video statement, to impeach his credibility (see People v Jones, 207 AD2d 745, 745 [1st Dept 1994], lv denied 85 NY2d 863 [1995]). This limited cross-examination did not imply that defendant's self-defense claim was a recent fabrication (see People v McClean, 69 NY2d 426, 428 [1987]). Moreover, throughout the trial, the People adduced evidence indicating that defendant began asserting his justification defense immediately after the incident, so "the statements were properly excluded because they had not been made prior to the time when a motive to falsify would have arisen" (People v Mejia, 292 AD2d 189, 190 [1st Dept 2002], lv denied 99 NY2d 561 [2002]; see also People v McDaniel, 81 NY2d 10, 18 [1993]).
The integrity of the grand jury proceedings was not impaired by the People's decision to refrain from presenting defendant's exculpatory hearsay statements to police (see People v Mitchell, 82 NY2d 509, 513 [1993]; People v Lancaster, 69 NY2d 20, 25-26 [1986]). Insofar as the prosecutor elicited defendant's inculpatory statement to police that he threw a knife in a dumpster and therefore arguably should have also elicited his subsequent remark: "I didn't want to kill him; he was going to shoot me; I didn't see a gun" (see Mitchell, 82 NY2d at 513), this potential error does not merit "the exceptional remedy of dismissal" (People v Morel, 131 AD3d 855, 861 [1st Dept 2015], lv denied 26 NY3d 1147 [2016]). Even if the officer had relayed the full statement to the grand jury, the People would not have been required to provide a justification charge, as defendant's statement did not suggest that he had any concrete reason to believe the victim was about to use deadly physical force, and he acknowledged that he never actually saw a firearm (see People v Harrell, 132 AD3d 507 [1st Dept 2015], lv denied 26 NY3d 1088 [2015]).
Defendant received the effective assistance of counsel under the state and federal standards (see People v Benevento, 91 NY2d 708, 711-712 [1998]; Strickland v Washington, 466 US 668 [1984]). Defendant has not shown that counsel's alleged deficiency fell below an objective standard of reasonableness or affected the outcome of the case. Counsel argued that defendant had standing to move to controvert the search warrant based on his continuing subjective expectation of privacy in his property, as demonstrated by the circumstances of his flight and his subsequent statements to police (see generally People v Ramirez-Portoreal, 88 NY2d 99, 108 [1996]). Contrary to defendant's contentions, counsel would not have prevailed had he supplemented the motion with an affidavit from defendant containing further information about his subjective beliefs and intentions (see People v Fernandez, 236 AD3d 527, 528 [1st Dept 2025], lv granted 43 NY3d 1055 [2025]), as this would not have altered the motion court's determination that defendant lacked an objectively reasonable expectation of privacy in an unlocked cell phone left behind, entirely unattended, in a public area of an apartment building (see e.g. People v Espinal, 161 AD3d 556, 557 [1st Dept 2018], lv denied 32 NY3d 1064 [2018]; People v Bilsky, 261 AD2d 174, 174-175 [1st Dept 1999], affd 95 NY2d 172 [2000]).
We perceive no basis for reducing the sentence.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 30, 2025